Roderick NASH, Appellant,

v.

The STATE of Texas.

No. 2–01–038–CR.

Court of Appeals of Texas, Fort Worth.

Oct. 23, 2003.

Rehearing Overruled Nov. 20, 2003.

William H. 'Bill' Ray, Fort Worth, for Appellant.

Tim Curry, Dist. Atty., Charles M. Mallin, Chief Appellate Section, Helena F. Faulkner, Lloyd Whelchel, Asst. Dist. Attys., Kelly Loftus, Asst. Dist. Atty. of Tarrant County, Forth Worth, for State.

## OPINION

SAM J. DAY, Justice.

### I. INTRODUCTION

Appellant Roderick Nash appeals from his conviction for aggravated assault causing serious bodily injury. In three points, he argues that the trial court erroneously allowed a magistrate to conduct jury selection and that the evidence is legally and factually insufficient to support the verdict. We affirm.

### II. FACTUAL BACKGROUND

On September 13, 2000, Nash knocked on Alexander Garza's door. Nash and Garza had been friends for about two years. Nash told Garza that he and another friend wanted to talk to Garza about some business, so Garza and Nash went outside where Nash's companion was sitting in the driver's seat of a car parked at the curb. Garza got in the car and sat in the passenger seat.

The driver stated that he was "from the old school" and that he wanted to tell Garza something. He then pulled out a small revolver. Garza grabbed the gun, and a struggle ensued. When the man yelled at Nash to hit Garza in the head, Nash pulled Garza out of the car by his waist and neck and threw him to the ground. Nash then "stomped" on Garza's left ankle, breaking the tibia and fibula.

Garza went to All Saints Hospital and was treated and released. Garza did not have surgery that evening because he did not have the insurance to pay for the procedure. He went to Tarrant County's John Peter Smith Hospital a week later for surgery. A second surgery was later required because Garza developed an infection. At trial, Garza testified that he had been unable to walk on his foot for over two months. The jury was charged on both assault and aggravated assault.

### III. REFERRAL OF JURY SELECTION TO MAGISTRATE

In his first point, Nash contends that the trial court erroneously allowed a magistrate to conduct jury selection in violation of section 54.656 of the Texas Government Code. TEX. GOV'T CODE ANN. § 54.656(c) (Vernon 1998) ("A magistrate may not preside over a trial on the merits, whether or not the trial is before a jury."). This court has twice previously held that in order to challenge the trial court's referral

of voir dire to a magistrate, the appellant must have preserved error in the trial court. *See Lemasurier v. State,* 91 S.W.3d 897, 900 (Tex.App.-Fort Worth 2002, pet. ref'd); *McKinney v. State,* 880 S.W.2d 868, 870 (Tex.App.-Fort Worth 1994, pet. ref'd). Although Nash's attorney objected before voir dire began, the extent of his objection was that "the defendant objects to the magistrate conducting jury selection. He asks that Judge Wilson or another district judge sit in her place to conduct voir dire." In response, the trial court overruled the motion, stating that "[t]his case has been referred to [the] magistrate by the district judge just for jury selection only. Anything else?"

■ To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the *specific grounds for the desired ruling* if they are not apparent from the context of the request, objection, or motion. Tex.R.App. P. 33.1(a)(1); *Mosley v. State,* 983 S.W.2d 249, 265 (Tex. Crim.App.1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). An objection is sufficient to preserve error for appellate review if the objection communicates to the trial court what the objecting party wants, why the objecting party thinks himself or herself is entitled to relief, and does so in a manner clear enough for the court to understand the objection and request at a time when the court is in a position to do something about it. *See Lankston v. State,* 827 S.W.2d 907, 908–09 (Tex.Crim.App.1992);

*Taylor v. State,* 93 S.W.3d 487, 504 (Tex. App.-Texarkana 2002, pet. ref'd); *see also Anderson v. State,* 817 S.W.2d 69, 73 n. 4 (Tex.Crim.App.1991) (stating it is not necessary for counsel to specify the rule under which he is complaining, but only to so frame his objection so that it may be clearly understood by the trial court).

The specific grounds for Nash's complaint against the magistrate conducting voir dire are not apparent from the context of his objection. While Nash was not necessarily required to state which statute or law he was relying on in support of his objection, he was required to inform the trial court why he believed he was entitled to the ruling requested. Nash provided no basis for why he was entitled to relief. Furthermore, because section 54.656(c) of the government code does not specifically state that a magistrate cannot conduct voir dire, we cannot presume that the magistrate might have been aware of the basis for the objection from the context in which it was made.[1] Thus, we hold that the objection failed to preserve error on the complaint made on appeal. We overrule Nash's first point.

## IV. SUFFICIENCY OF THE EVIDENCE

■ In his second and third points, Nash argues that the evidence was legally and factually insufficient to support his conviction for aggravated assault because there was no evidence of serious bodily injury. In reviewing the legal sufficiency of the evidence to support a conviction, we

---

1. Several courts of appeals have determined that "trial on the merits" commences after voir dire is completed. *See, e.g., Thornton v. State,* 957 S.W.2d 153, 156 (Tex.App.-Fort Worth 1997) (stating trial is considered to commence when jeopardy attaches—when jury is impaneled—because it is at that point that the defendant is "put to trial before the trier of facts"), *aff'd,* 986 S.W.2d 615 (Tex. Crim.App.1999); *Carpenter v. State,* 952 S.W.2d 1, 6 (Tex.App.-San Antonio 1997) (holding trial "commences" at the same point that jeopardy attaches), *aff'd,* 979 S.W.2d 633 (Tex.Crim.App.1998); *Hinojosa v. State,* 875 S.W.2d 339, 342 (Tex.App.-Corpus Christi 1994, no pet.) (holding trial on the merits under code of criminal procedure commences at the time that the jury is impaneled and sworn, i.e., at the same time that jeopardy attaches).

view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Burden v. State*, 55 S.W.3d 608, 612 (Tex. Crim.App.2001). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim.App.2000); *Clewis v. State*, 922 S.W.2d 126, 129, 134 (Tex.Crim.App.1996). Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence. *Johnson*, 23 S.W.3d at 11. Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.* In performing this review, we are to give due deference to the fact finder's determinations. *Id.* at 8–9; *Clewis*, 922 S.W.2d at 136. We may not

substitute our judgment for that of the fact finder's. *Johnson*, 23 S.W.3d at 12. Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. *Johnson*, 23 S.W.3d at 9, 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

To make a determination of factual insufficiency, a complete and detailed examination of all the relevant evidence is required. *Johnson*, 23 S.W.3d at 12. A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim.App.2003).

Serious bodily injury means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. TEX. PENAL CODE ANN. § 1.07(a)(46) (Vernon 2003). Bodily injury means physical pain, illness, or any impairment of physical condition. *Id.* § 1.07(a)(8). Because the penal code provides a different definition for "bodily injury" than for "serious bodily injury," the Texas Court of Criminal Appeals has instructed us in *Moore v. State* that we must presume that the Texas Legislature intended that there be a meaningful difference or distinction between the two. 739 S.W.2d 347, 349 (Tex.Crim.App.1987). Whether an injury constitutes serious bodily injury must be determined on a case-by-case basis. *Id.* at 352.

In examining the definition of "serious bodily injury," the *Moore* court explained that "protracted" means extended, lengthened, prolonged, or continued. *Id.* The injury in the case before us did not create a substantial risk of death or cause death or serious permanent disfigurement. Thus, for Nash's conviction of aggravated

assault to stand, the record must reflect legally sufficient evidence of protracted loss or protracted impairment of the use of a bodily member or organ, as required by the statute. TEX. PENAL CODE ANN. § 22.02. The relevant issue is the disfiguring and impairing quality of the bodily injury as it was inflicted, not after the effects have been ameliorated or exacerbated by other actions such as medical treatment. *Brown v. State,* 605 S.W.2d 572, 575 (Tex.Crim.App. [Panel Op.] 1980), *overruled on other grounds, Hedicke v. State,* 779 S.W.2d 837 (Tex.Crim.App. 1989).

Although the State offered no expert medical testimony of causation, degree of loss or impairment of the function of the ankle, or prognosis, Garza testified without objection regarding his injuries and prognosis, the subsequent infection at the operation site and his additional surgery, and his physical disability and missed work. Garza testified that after the stomping attack, he could not stand or walk and that both bones in his lower leg had been broken. At the hospital, he was told that he would need surgery and that it would take six months to a year for his leg to completely heal. During surgery, a plate, a rod, and some pins were implanted in his ankle. While recovering from surgery, Garza could not put weight on his left foot because it was too painful. Eight weeks after surgery, Garza had been told that although the bone had healed, his doctors had discovered that his ankle had become infected. As a result, a second surgery was performed, and the plate was removed. After the second surgery, Garza again had to wear a cast and could only walk with crutches.

Two and a half months after the accident, Garza returned to work, but had to use crutches to walk. Garza testified that he now wears a walking boot so that he will not limp. He still wears the boot because "I don't do enough therapy or I haven't gone to enough therapy or done the right things for it to heal, I would imagine." On cross examination, Garza stated that he was not in a position to say how long "the injury is going to be" because he is not a doctor and that he could not give a medical diagnosis regarding the injuries to his ankle or testify as to what the doctors did to him.

The State also introduced X-rays without objection from which Garza pointed out the fractures, the subsequent surgery, and the location of metal plates. Medical records from Garza's emergency room visit to All Saints Hospital were admitted as Defendant's Exhibit Two. His injury was described in the record as "a nondisplaced distal fibular fracture. There is a minimally displaced medial malleolar fracture. Ankle mortise appears intact. There is a joint effusion." Severity of pain at the time was described as moderate. The records show that Garza's leg was splinted, he was given crutches and a drug prescription for pain, and he was sent home. Although the written instructions from the hospital did not schedule specific follow-up visits, Garza was instructed to "FOLLOW–UP WITH [HIS] DOCTOR IN 2–3 DAYS." The instructions also stated that "[t]he typical broken bone requires only protection and sufficient time for healing.... The length of time depends on the location and type of fracture, and on the age of the patient. The treatment plan the physician has outlined for you is customized to your fracture and health condition." Garza did not return to All Saints for further treatment or surgery because he did not have insurance to cover the expense. He had surgery a week later at Tarrant County's John Peter Smith Hospital.

Garza's fiancée, Dorinda McCoy, testified that she went with Garza to St. Jo-

seph's Hospital for the initial treatment.[2] He was taken in an ambulance, and she followed in her car. The emergency room personnel dressed Garza's ankle with a half-cast and wrapped it. McCoy testified that "[t]hey said if he didn't get surgery within the next two days, it would start healing on its own and they will have to rebreak it." The record contains no evidence of who "they" are. Garza had surgery at least a week later. McCoy testified that after the first surgery, Garza's ankle became infected and a second surgery was required.

The injury to Garza's ankle was not shown to have created a substantial risk of death or serious permanent disfigurement. The evidence shows, however, that Garza could not walk or stand after the attack; he had at least one surgery after the attack because of the injuries he sustained in the attack; he had a plate, a rod, and some pins implanted in his ankle during the first surgery; he could not put weight on his left foot after his first surgery; another surgery was necessary because an infection developed; after his second surgery, he had to have a cast put on and use crutches to walk for an unspecified length of time; he could not return to work for two and a half months and had to use crutches to walk when he returned to work; and he currently uses a boot to walk because of a limp. Applying the proper standard of review, we hold that the evidence was legally sufficient to demonstrate a protracted loss or impairment of a bodily member; thus, the evidence was legally sufficient to show serious bodily injury. Furthermore, we do not believe the evidence is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence. Conse-

quently, we overrule Nash's second and third points.

## V. CONCLUSION

Having overruled Nash's points on appeal, we affirm the trial court's judgment.

LIVINGSTON, J. filed a concurring opinion.

DAUPHINOT, J. filed a dissenting opinion.

CAYCE, C.J.; GARDNER and WALKER, JJ. concur in result only.

TERRIE LIVINGSTON, Justice, concurring.

While I agree with the disposition of the case by the majority, I write separately because I believe section 54.656 of the Texas Government Code does not prohibit a magistrate from conducting jury selection. TEX. GOV'T CODE ANN. § 54.656(c) (Vernon 1998) ("A magistrate may not preside over a trial *on the merits,* whether or not the trial is before a jury.") (emphasis added). Neither of our prior opinions related to this issue have ever reached the conclusion that the magistrate's act prohibits a magistrate from conducting voir dire because it is part of the "trial on the merits." *See Lemasurier v. State,* 91 S.W.3d 897, 900 (Tex.App.-Fort Worth 2002, pet. ref'd); *McKinney v. State,* 880 S.W.2d 868, 870 (Tex.App.-Fort Worth 1994, pet. ref'd). In both cases, the appellants failed to preserve error because they had failed to lodge an objection, so the issue was not before us in either case. *Lemasurier,* 91 S.W.3d at 900; *McKinney,* 880 S.W.2d at 870. The majority here concludes that appellant's objection was insufficient to preserve error. Majority Op. at 537. I believe the record shows

---

**2.** Although Garza testified that he went to All Saints first, McCoy testified that she thinks he went to St. Joseph's first, but she was "not positive."

appellant clearly preserved error by his timely and sufficient objection—it was clear he was objecting to a magistrate conducting voir dire and was asking a district judge to handle voir dire. Thus, I believe the issue is squarely before us and should be addressed.

As noted by the majority, several courts have determined that "trial on the merits" commences *after* voir dire is completed. *See, e.g., State v. Turner,* 898 S.W.2d 303, 306 (Tex.Crim.App.1995) (holding that if defendant fails to object to a defect in the indictment before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect—interpreting article 1.14(b) of the code of criminal procedure), *overruled on other grounds, Proctor v. State,* 967 S.W.2d 840 (Tex.Crim.App.1998); *Thornton v. State,* 957 S.W.2d 153, 156 (Tex. App.-Fort Worth 1997) (concluding that a trial is considered to commence when jeopardy attaches, i.e., when jury is empaneled because it is at that point that defendant is "put to trial before the trier of facts"—interpreting section 3.04(a) of the penal code, when to sever), *aff'd,* 986 S.W.2d 615 (Tex.Crim.App.1999); *Carpenter v. State,* 952 S.W.2d 1, 6 (Tex.App.-San Antonio 1997) (holding trial "commences" at the same point that jeopardy attaches—interpreting article 28.10 of the code of criminal procedure, when indictment can be amended), *aff'd,* 979 S.W.2d 633 (Tex.Crim.App. 1998); *Dixon v. State,* 932 S.W.2d 567, 569 (Tex.App.-Tyler 1995, no pet.) (allowing amendment to the indictment up until the trial on the merits commences—interpreting article 28.10 of the code of criminal procedure); *Hinojosa v. State,* 875 S.W.2d 339, 342 (Tex.App.-Corpus Christi 1994, no pet.) (holding trial on the merits under code of criminal procedure commences at the time the jury is empaneled and sworn, i.e., at the same time jeopardy attaches— interpreting article 28.10); *see also* TEX. CODE CRIM. PROC. ANN. arts. 1.14(b), 3.04, 28.10 (Vernon 1989 & Supp.2003). Therefore, I would hold that voir dire is not a portion of the "trial on the merits" for purposes of the magistrate's act and that the trial court did not err in allowing the magistrate to conduct it.

Although I can see many compelling reasons we would prefer the trial court judge who will hear the "trial on the merits" to sit during voir dire, I do not believe the statute requires this. For this reason, I respectfully concur.

LEE ANN DAUPHINOT, Justice, dissenting.

## I.

I respectfully dissent from the majority's holding that Appellant failed to preserve his complaint to the magistrate's conducting voir dire. As the majority concedes, Appellant made a timely objection to the magistrate's conducting voir dire and asked that a district judge preside over voir dire.[1] I cannot disagree more strongly with the majority's unfounded statement that the grounds of Appellant's complaint "are not apparent from the context of his objection."[2] The grounds are abundantly apparent. The majority's guess that the magistrate may not have been sufficiently familiar with the law to understand that the prohibition against conducting a trial on the merits might include jury voir dire insults both the magistrate and the intelligence of this state's bench and bar.

The State nowhere claims that Appellant did not preserve his complaint. I join the

---

1. Majority Op. at 536–57.

2. *Id.* at 537.

concurring opinion of Justice Livingston in concluding that Appellant "clearly preserved error by his timely and sufficient objection."[3] As the concurring opinion states, this "issue is squarely before us and should be addressed."[4]

## II.

Two years ago, the Texas Court of Criminal Appeals held,

> [a] trial court may have jurisdiction to act over a case, yet lack authority to act in a particular manner over that case.... Lack of *authority* to act in a particular manner may render the judgment either void or voidable depending on the type of the error, however. Unauthorized acts (or errors) can be characterized as either "illegal" or "irregular." ... "Illegal acts" are defined as "acts that are not authorized by law." ... On the other hand, "irregular acts" are defined as "acts or practices that vary from the normal conduct of an action." ... While a judgment is merely "voidable for irregularity," it is "void for illegality."[5]

Our sister court in El Paso has addressed the void vs. voidable issue in the context of an assigned visiting judge whose oath had expired before he issued a judgment nisi:

> Because Judge Woodard was required to take the constitutional oaths, but did not do so, all judicial actions taken by him in the case below were without authority. [*Lone Star Indus., Inc. v. Ater,*

845 S.W.2d 334, 337 (Tex.App.-El Paso 1992, no writ).] The Judgment Nisi therefore is without effect.

. . . .

Because Prieto Bail Bonds raised its complaint about Judge Woodard's qualifications at the trial level, as required under *Wilson* [*v. State,* 977 S.W.2d 379 (Tex.Crim.App.1998)], we need not reach the question of whether his actions in this case were done wholly without authority, and thus are void, or were simply procedurally infirm, and therefore merely voidable. Under either analysis, we must reverse. But we feel bound to observe that the Court of Criminal Appeals has held in a similar situation, involving an "alternative" municipal judge who had never taken the oaths of office, that: "without the taking of the oath prescribed by the Constitution of this State, one cannot become either a de jure or de facto judge, and his acts as such are void."[6]

A trial court " 'may take a particular action only if that action is authorized by constitutional provision, statute or common law, or the power rises from an inherent or implied power.' "[7] At the time of Appellant's trial, the duties that a Tarrant County court might properly refer to a magistrate were expressly delineated in section 54.656 of the government code. That section provided:

> (a) A judge may refer to a magistrate any criminal case for proceedings involving:

---

3. Concurring Op. at 540–41.

4. *Id.*

5. *Ex parte Seidel,* 39 S.W.3d 221, 224 (Tex. Crim.App.2001) (citations omitted).

6. *Prieto Bail Bonds v. State,* 994 S.W.2d 316, 321 (Tex.App.-El Paso 1999, pet. ref'd) (quoting *French v. State,* 572 S.W.2d 934, 939

(Tex.Crim.App.1977) (op. on 2nd reh'g)); *see also Davis v. State,* 956 S.W.2d 555, 559 (Tex. Crim.App.1997); *Fain v. State,* 986 S.W.2d 666, 675–76 (Tex.App.-Austin 1998, pet. ref'd).

7. *Seidel,* 39 S.W.3d at 223 (quoting *State v. Johnson,* 821 S.W.2d 609, 612 (Tex.Crim.App. 1991)).

(1) a negotiated plea of guilty before the court;

(2) a bond forfeiture;

(3) a pretrial motion;

(4) a postconviction writ of habeas corpus;

(5) an examining trial;

(6) an occupational driver's license; and

(7) any other matter the judge considers necessary and proper.[8]

It also provided that "[a] magistrate may accept a plea of guilty for a misdemeanor from a defendant charged with both misdemeanor and felony offenses."[9] Finally, it provided that "[a] magistrate may not preside over a trial on the merits, whether or not the trial is before a jury."[10]

The concurring opinion argues that there is a distinction between a trial and a trial on the merits. This proposition is correct. In one criminal case, there may be a jury trial on competence to stand trial. There may be an examining trial. There may be a trial on the merits to determine guilt. The State and the concurring opinion also argue that jury selection is not part of the trial on the merits. This court, however, held in *Watson v. State*, when we determined that the Texas Rules of Evidence apply to jury selection, that jury selection is an integral part of a trial on the merits in a criminal case.[11]

This court's precedent does not stand alone. The Texas Code of Criminal Procedure assumes jury selection is part of the trial on the merits when it provides, in article 33.03, that a defendant in a felony prosecution "must be personally present at the trial," although "the trial may proceed to its conclusion" "when the defendant voluntarily absents himself . . . after the jury has been selected."[12] Article 33.03 further provides that "[w]hen the record in the appellate court shows that the defendant was present at the commencement, or any portion of the trial, it shall be presumed in the absence of all evidence in the record to the contrary that he was present during the whole trial."[13]

Similarly, the Texas Court of Criminal Appeals has held that a defendant's right to be present at trial is not waivable until *after* the jury has been selected.[14] The jury is "selected" when the parties turn in their jury lists, indicating their peremptory strikes.[15] The day the trial on the merits commences has traditionally been considered the day jury selection begins.[16]

To hold that the trial on the merits does not begin until jeopardy attaches, which is

---

**8.** Tex. Gov't Code Ann. § 54.656(a) (Vernon Supp.2003).

**9.** Act of April 30, 1987, 70th Leg., R.S., ch. 81, § 1, 1987 Tex. Gen. Laws 188, *amended by* Act of May 16, 2003, 78th Leg., R.S., ch. 910, § 2, 2003 Tex. Gen. Laws 2738, 2739.

**10.** Act of April 30, 1987, 70th Leg., R.S., ch. 81, § 1, 1987 Tex. Gen. Laws 188, *amended by* Act of May 16, 2003, 78th Leg., R.S., ch. 910, § 2, 2003 Tex. Gen. Laws 2738, 2739. *See also* Act of May 16, 2003, 78th Leg., R.S., ch. 910, § 3, 2003 Tex. Gen. Laws 2738, 2739 (amending section 54.658(a)(14) of the government code to add jury selection to a magistrate's powers).

**11.** *Watson v. State*, 917 S.W.2d 65, 67 (Tex. App.-Fort Worth 1996, pet. ref'd).

**12.** Tex Code Crim. Proc. Ann. art. 33.03 (Vernon 1989).

**13.** *Id.*

**14.** *Miller v. State*, 692 S.W.2d 88, 91 (Tex. Crim.App.1985).

**15.** *Id.* at 93.

**16.** *See, e.g., Sodipo v. State*, 815 S.W.2d 551, 552–53 (Tex.Crim.App.1990); *Williams v. State*, 837 S.W.2d 819, 820 (Tex.App.-Houston [14th Dist.] 1992, no pet.).

after jury selection,[17] would deepen the quagmire we already find ourselves in with motions to quash. In that scenario, a defendant could hold his motion to quash the indictment until after each side had submitted its strike list so long as the jury was seated and sworn on the following day.[18] In a capital murder trial, if the trial on the merits did not begin until jeopardy attached, a criminal defendant could wait until the last juror and alternate had been chosen to urge his motion to quash because the jury is usually sworn on some day after the end of voir dire. The Texas Legislature cannot have intended to give the criminal defendant such a generous opportunity to sandbag the State.

Additionally, instead of the timeliness of the motion to quash being determined by when it is filed, its timeliness would instead be determined by the ruling thereon, as long as it was filed before the jury was sworn. A granted motion to quash would be deemed timely if filed before the jury was sworn because the trial would never commence in that action; a denied motion to quash would be deemed untimely simply by the trial court's swearing the jury and ordering the defendant to enter his plea on the same day.

As Justice James from the Dallas Court of Appeals, joined by Justice Fitzgerald and Justice Richter, has stated in a slightly different context,

> An example may be seen in a situation where a defendant is charged under two charging instruments and moves to quash both charging instruments. If

the court grants one motion and denies the other, subsequently proceeding with the swearing and impaneling of the jury the same day, the granted motion will be considered timely for appeal purposes, but the denied motion would be considered untimely and thus waived. I do not read the code as intending such contrasting results stemming from identical actions.[19]

When a party is notified of the setting date for the trial on the merits, the party is notified of the date jury selection begins. When a motion for new trial is granted or a case is remanded for a new trial on the merits, the trial on the merits perforce includes jury selection. As we have previously stated, jury selection is an integral part of the jury trial.[20] In a jury trial, the date the trial on the merits commences can only be the date both sides announce ready for trial and begin jury selection. We speak of the close of the evidence in the trial on the merits.[21] Thus, the hearing of evidence is but one step in the trial on the merits.

Based on the above rationale, the version of section 54.656(c) of the government code that was in force at the time of Appellant's trial prohibited the Tarrant County trial court from referring Appellant's case to a magistrate for jury selection because jury selection is an integral part of a jury trial on the merits. No other statutory or constitutional provision allowed what section 54.656(c) prohibited at that time, nor did the district court have

---

17. *See Crist v. Bretz*, 437 U.S. 28, 47, 98 S.Ct. 2156, 2167, 57 L.Ed.2d 24 (1978); *Ex parte Little*, 887 S.W.2d 62, 64 (Tex.Crim.App.1994) (both holding that jeopardy attaches when jury is sworn).

18. *See* TEX.CODE CRIM. PROC. Ann. art. 1.14(b) (Vernon Supp.2003).

19. *State v. Sanchez*, No. 05–02–717–CR, 2003 WL 1848611, at *10, —— S.W.3d ——, —— (Tex.App.-Dallas Apr.10, 2003, pet. granted).

20. *Watson*, 917 S.W.2d at 67.

21. *See, e.g., Hampton v. State*, 109 S.W.3d 437, 439 (Tex.Crim.App.2003); *In re B.L.D.*, 113 S.W.3d 340, 347 (Tex.2003).

inherent power to do what the governing statute prohibited.[22]

Additionally, the Texas Legislature recognized this prohibition when it amended sections 54.656(c) and 54.658 to allow the magistrate to conduct the voir dire portion of a jury trial, effective September 1, 2003.[23] Senate bill 922, allowing a Tarrant County magistrate to select a jury, was presented to the judicial committee by Senator Chris Harris. During his presentation, he stated that it was important to pass the legislation because in Tarrant County the magistrates were already sitting-in on jury selections on a temporary basis. While perhaps not dispositive of the issue, Senator Harris's comments are an indication of the Texas Legislature's original intent in passing the legislation authorizing magistrates in Tarrant County, as well as the legislature's intent in amending the applicable statutes.

Just as a district court cannot act outside its authority, neither can a magistrate. When a "district judge has authority over the case, the magistrate is qualified to be a magistrate, and he performs an act authorized … [by] Section 54.656, his acts are not void."[24] Implicitly, then, if the magistrate performs an act not authorized by section 54.656, his act is void.[25]

In *Davis*, the trial court was authorized to refer the case to the magistrate, and the magistrate was authorized to perform the acts he performed, but the order referring the case to him was signed too late. The error was thus procedural and irregular, not illegal. Consequently, the conviction was not void, but voidable.[26]

In *French v. State*, a temporary appointed municipal judge's actions were held void because he had not taken the oath of office required for elected judges and appointed officers by Article 16, section 1 of the Texas Constitution.[27]

In *Gambling Paraphernalia v. State*, the Dallas Court of Appeals held that a criminal district court reversibly erred by referring a forfeiture matter to a magistrate because, although it related to a criminal matter, it was not in and of itself a criminal case.[28] The matter was thus beyond the district court's powers and "outside the magistrate's statutory authority."[29]

The Dallas court based its decision, in part, on *Dean v. State*.[30] In that case, a Dallas County criminal district court had referred a case to a magistrate for expunction. The Dallas Court of Appeals held that an expunction was not a criminal case and that under the statute in existence at the time, a criminal district court could not properly refer the case to a magistrate, and a magistrate could not properly hear it.[31] The Dallas Court of Appeals therefore concluded that the expunction was

22. *Seidel,* 39 S.W.3d at 224; *Johnson,* 821 S.W.2d at 613.

23. Act of May 16, 2003, 78th Leg., R.S., ch. 910, §§ 2, 3, 2003 Tex. Gen. Laws 2738, 2739 (to be codified at Tex. Gov't Code Ann. § 54.656(c) and § 54.658(a)(14)).

24. *Davis v. State,* 956 S.W.2d 555, 560 (Tex. Crim.App.1997).

25. *See id.*

26. *Id.*

27. 572 S.W.2d at 939.

28. 22 S.W.3d 625, 628 (Tex.App.-Dallas 2000, no pet.).

29. *Id.*

30. 697 S.W.2d 683 (Tex.App.-Dallas 1985), *aff'd,* 749 S.W.2d 80 (Tex.Crim.App.1988).

31. *Id.* at 686–87.

void.[32]

Like the trial courts in *Seidel, Gambling Paraphernalia,* and *Dean,* the district court in Appellant's case acted without authority in referring this case to a magistrate for jury selection. Like those courts and the municipal judge in *French,* the district court in Appellant's case was never authorized under any constitutional or statutory provision to take the actions it took—it was never authorized to refer the duty of jury selection to a magistrate. Also, like the magistrates in *Seidel, Gambling Paraphernalia,* and *Dean,* the magistrate in Appellant's case was never qualified under the constitution or statutes to take the actions he took; he was never qualified to conduct jury selection.

A magistrate's authority is analogous to that of a visiting judge in a civil case. In a civil case, if there is no objection to the case's being heard by a visiting judge, the actions of the visiting judge have the same force and effect as those of the elected judge.[33] If either party lodges a timely objection to the visiting judge's hearing the case, however, the visiting judge is automatically disqualified, and all actions and orders of the visiting judge subsequent to the objection are void.[34] What voids the visiting judge's actions subsequent to objection is the objection itself. Through its objection, the party completes the steps necessary to assert its right to a

duly elected judge and simultaneously preserves any ensuing error should its assertion be ignored.

In a criminal case tried in Tarrant County before September 1, 2003, the governing statutes specifically denied the magistrate the authority to conduct jury trials.[35] Jury selection is an integral part of a jury trial.[36] While the trial court had jurisdiction over jury selection, it had no authority to refer jury selection to the magistrate, and the magistrate had no authority to conduct it. By voicing a timely objection, Appellant asserted his right to have the duly elected district judge preside over the jury selection portion of the trial and simultaneously preserved the trial court's error for our review.[37] Under *Seidel* and the clear mandate of the governing portions of chapter 54 of the government code, we are obligated to hold that the orders and rulings of the magistrate in conducting jury selection are void.[38] The jury that convicted Appellant was thus a void jury, the verdict it delivered is void, and the judgment based on that verdict is void. This court should sustain Appellant's first point.

## III.

Appellant has also complained that the evidence is legally insufficient to support his conviction for aggravated assault because there was no evidence of serious

32. *Id.* at 687.

33. See *Chandler v. Chandler,* 991 S.W.2d 367, 383 (Tex.App.-El Paso 1999, pet. denied), *cert. denied,* 529 U.S. 1054, 120 S.Ct. 1557, 146 L.Ed.2d 462 (2000); *Holstein v. Fed. Debt Mgmt., Inc.,* 902 S.W.2d 31, 37 (Tex.App.-Houston [1st Dist.] 1995, no writ).

34. Tex. Gov't Code Ann. § 74.053 (Vernon 1998); *In re Canales,* 52 S.W.3d 698, 704 (Tex.2001); *Golden v. McNeal,* 78 S.W.3d 488, 496 (Tex.App.-Houston [14th Dist.] 2002, pet. denied); *In re Cuban,* 24 S.W.3d 381, 382 (Tex.App.-Dallas 2000, orig. proceeding).

35. Act of April 30, 1987, 70th Leg., R.S., ch. 81, § 1, 1987 Tex. Gen. Laws 188, 189, *amended by* Act of May 16, 2003, 78th Leg., R.S., ch. 910, §§ 2, 3, 2003 Tex. Gen. Laws 2738, 2739 (to be codified at Tex. Gov't Code Ann. §§ 54.656(c) and 54.658(a)(14)).

36. *Watson,* 917 S.W.2d at 67.

37. See Tex.R.App. P. 33.1(a).

38. See *Seidel,* 39 S.W.3d at 225.

bodily injury.[39] Serious bodily injury means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.[40] Bodily injury means physical pain, illness, or any impairment of physical condition.[41] Because the penal code provides a different definition for "bodily injury" than for "serious bodily injury," the Texas Court of Criminal Appeals has instructed us in *Moore v. State* that we must presume that the Texas Legislature intended that there be a meaningful difference or distinction between the two.[42] Whether an injury constitutes serious bodily injury must be determined on a case-by-case basis.[43]

In examining the definition of "serious bodily injury," the *Moore* court explained that "protracted" means extended, lengthened, prolonged, or continued.[44] The injury in the case before us did not create a substantial risk of death or cause death or serious permanent disfigurement. Thus, for Appellant's conviction of aggravated assault to stand, the record must reflect legally sufficient evidence of protracted loss or protracted impairment of the use of a bodily member or organ, as required by

the statute.[45] The relevant issue is the disfiguring and impairing quality of the bodily injury as it was inflicted, not after the effects have been ameliorated or exacerbated by other actions such as medical treatment.[46]

At trial, Appellant moved for an instructed verdict on the basis that the State had failed to prove serious bodily injury. Appellant pointed to the *Moore* court's explanation of the term "protracted."[47] The State offered no expert medical testimony of causation, degree of loss or impairment of the function of the ankle, or prognosis. Medical records admitted as Defendant's Exhibit Two consisted exclusively of emergency room reports. The injury was described as "a nondisplaced distal fibular fracture. There is a minimally displaced medial malleolar fracture. Ankle mortise appears intact. There is a joint effusion." Severity of pain was described as moderate.

The only testimony concerning the extent of Garza's injuries or his prognosis was that of Garza himself. Garza testified:

- that both bones in his lower leg were broken in the stomping attack;
- about the subsequent infection at the operation site and his additional surgery;

---

**39.** TEX.CODE CRIM. PROC. ANN. art. 1.11 (Vernon 1977); *Munoz v. State*, 853 S.W.2d 558, 560 (Tex.Crim.App.1993); *Burks v. United States*, 437 U.S. 1, 16–18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 24–25, 98 S.Ct. 2151, 2154–55, 57 L.Ed.2d 15 (1978); *see North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (holding that the Fifth Amendment protects against a second prosecution for the same offense after acquittal or conviction), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

**40.** TEX. PENAL CODE ANN. § 1.07(a)(46) (Vernon 2003).

**41.** *Id.* § 1.07(a)(8).

**42.** *Moore v. State*, 739 S.W.2d 347, 349 (Tex. Crim.App.1987).

**43.** *Id.* at 352.

**44.** *Id.*

**45.** TEX. PENAL CODE ANN. § 22.02 (Vernon 2003).

**46.** *Brown v. State*, 605 S.W.2d 572, 575 (Tex. Crim.App. [Panel Op.] 1980), *overruled on other grounds, Hedicke v. State*, 779 S.W.2d 837 (Tex.Crim.App.1989), *cert. denied*, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 836 (1990).

**47.** *Moore*, 739 S.W.2d at 352.

- about his physical disability and missed work;

- that at the hospital he talked to a nurse and that "they" told him it would take six months to a year for his leg to completely heal;

- that he was not in a position to say how long "the injury is going to be" because he is not a doctor;

- that he could not answer any questions about his ankle or about what the doctors did to him;

- that a plate, a rod, and some pins had been implanted in his ankle during the surgery;

- that the plate had been removed;

- that he had been told the bone had healed and that he would be using a walking boot without crutches;

- that he wore a walking boot so that he would not limp; and

- that he still wore the boot because "I don't do enough therapy or I haven't gone to enough therapy or done the right things for it to heal, I would imagine."

The State introduced X-rays from which Garza pointed out the fractures, the subsequent surgery, and the location of metal plates.

Garza's fiancée, Glenda McCoy, testified that she went with Garza to St. Joseph's Hospital for the initial treatment. He was taken in an ambulance, and she followed in her car. The emergency room personnel dressed Garza's ankle with a half-cast and wrapped it. McCoy testified that "[t]hey said that if he didn't get surgery within the next two days, it would start healing on its own and they w[ould] have to rebreak it." The record contains no evidence of who "they" were. Garza had surgery at least a week later. McCoy testified that after the first surgery, Garza's ankle became infected and a second surgery was required.

He was off work for two and a half months.

The emergency room record indicates only minor fractures. Garza's leg was splinted, he was given crutches and a drug prescription for the moderate pain he suffered, and he was sent home. The written instructions from the hospital specifically state that no definite follow-up visits had been scheduled. The instructions, which Garza did sign, also state that "[t]he typical broken bone requires only protection and sufficient time for healing.... The length of time depends on the location and type of fracture, and on the age of the patient. The treatment plan the physician has outlined for you is customized to your fracture and health condition." Whatever the customized treatment plan was, it did not include a specific date for a return visit. Garza was instructed that no follow-up visits had been scheduled but that he should "FOLLOW–UP WITH [HIS] DOCTOR IN 2–3 DAYS." Garza left the hospital before signing the remaining emergency room documents.

Although Garza testified he still had a little bit of a limp, there was no evidence whether the cause of the limp was the minor fracture of his ankle, the infection that resulted after surgery, or something totally different. Nothing in the record shows whether the first surgery was the result of the injury, Garza's delay in seeking treatment, or some other new and independent cause. Garza was able to work, there was no evidence that any of his activities were restricted, and no medical testimony or medical records indicated protracted loss or impairment of the use of his ankle. As the trial judge pointed out, Garza walked into the courtroom.

The injury to Garza's ankle was not shown to have created substantial risk of death or serious permanent disfigurement. As in *Moore*, the only evidence we can find

in the record to support the jury's implicit finding that Appellant caused the complainant serious bodily injury is Garza's speculative testimony, with no medical basis, and the emergency room record that described only bodily injury. Because the evidence is legally insufficient to support a finding of serious bodily injury, we should reform the judgment to reflect a conviction for the lesser included offense of assault.[48]

Because the majority fails to address the merits of Appellant's complaint that the magistrate conducted voir dire and because the majority holds that the evidence is legally sufficient to support Appellant's conviction for aggravated assault, I respectfully dissent.

---

48. *Herrin v. State,* No. 73987, slip op. at 14–15, 2002 WL 31839153, at *5–6, —— S.W.3d ——, ——————— (Tex.Crim.App. Dec.18, 2002); *Collier v. State,* 999 S.W.2d 779, 782 (Tex.Crim.App.1999).