COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EBENEZER AKEREDOLU, | § | No. 08-07-00191-CR |
| Appellant, | § | Appeal from the |
| v. | § | 371st District Court |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC#0994272D) |
| | § | |

**O P I N I O N**

This is an appeal from a conviction for the offense of murder.  Appellant pleaded guilty to the jury, and the jury assessed punishment at life imprisonment.  We affirm.

**I.  SUMMARY OF THE EVIDENCE**

Heath Wester, a detective for the Grand Prairie Police Department, testified that on September 8, 2005, he was dispatched to 2901 Mayfield Road in Grand Prairie, Texas to investigate a shooting.  Upon arrival, he saw an African-American female slumped over in a car in the parking lot of an apartment complex.  She had suffered multiple gun shots to the upper torso, into the shoulder, and neck area.  The detective learned that Appellant was being held nearby and he proceeded to that location.  Appellant was disoriented and appeared to be intoxicated although there were no visible signs of any intoxication.  He stated to the detective that he had attempted to commit suicide by drowning himself in a local lake.

Appellant was transported to the police station and he gave a statement to Detective Wester.  In that statement, Appellant confessed to the shooting and gave various details concerning the offense.  The investigation revealed that Appellant was originally from Nigeria, but was an American

citizen and he had no prior convictions.

Evidence at trial revealed that the deceased was from Nigeria and had become an American citizen. A friend and co-worker of the deceased testified that the deceased was fearful of Appellant and that Appellant had told her several times that the Defendant intended to kill her. They had been divorced almost six months prior to the shooting.

A business partner of Appellant testified that Appellant's business had failed and that he was upset that he was unable to provide for his family. Appellant's cousin testified that Appellant's inability to reconcile with the deceased and the stress from financial difficulties drove Appellant to shoot his ex-wife. Another cousin had counseled both parties regarding a relationship the deceased was having with another man.

Dr. Thomas Cook, a clinical psychologist, testified that Appellant defined himself by his ability to provide for his family and that his inability to do so, along with the existence of the affair, drove Appellant psychologically apart.

## II. DISCUSSION

In Issue No. One, Appellant maintains that the court abused its discretion by excluding evidence of a love poem written by the deceased to another man. Specifically, Appellant maintains that the evidence was relevant to Appellant's state of mind at the time of the shooting and to show the prior relationship between Appellant and the deceased. Appellant found the poem when he searched the deceased's luggage about twenty-nine months prior to the shooting. He showed this poem to a friend about a year and one-half prior to the shooting.

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *See Levario v. State*, 964 S.W.2d 290, 296 (Tex.App.–El Paso 1997, no pet.). The trial court's rulings should be sustained on appeal if correct on any theory of law applicable to the case.

*Weatherred v. State*, 975 S.W.2d 323, 323 (Tex.Crim.App. 1998). As long as the trial court's ruling was within the zone of reasonable disagreement, the decision will be upheld. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (opin. on reh'g); *Levario*, 964 S.W.2d at 297. It has long been the law that when a trial court's decision to admit or exclude evidence is correct based on any theory of law applicable to the case, the trial court's decision will be affirmed. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). This is the case even if the trial judge has given an incorrect reason. *Id.*

The State objected to the admission of the typewritten love note on hearsay and improper authentication grounds; the Court sustained the objection on the hearsay only. The Texas Rules of Evidence require, as a predicate to admissibility, that evidence be properly authenticated or identified. TEX.R.EVID. 901. In other words, the proponent must show the trial court that the document or evidence in question is what he purports it to be. *See* TEX.R.EVID. 901(a); *Mega Child Care, Inc. v. Texas Dept. of Protective and Regulatory Services*, 29 S.W.3d 303 (Tex.App.–Houston [14th Dist.] 2000, no pet.). At trial, Appellant attempted to introduce the poem through Gani Olabode, a family friend, to establish the Appellant's state of mind when he approached the victim with the gun and to show why he had become so disgruntled in his marriage. However, Olabode could not testify as to who typed the poem or when it had been prepared. The only information he had was what the Defendant had told him. Appellant's counsel agreed with the State's counsel that "we don't know who wrote the document." In order for the poem to be admissible it had to be authenticated and it was not. Failure to authenticate a document renders it inadmissible even if it otherwise is relevant and admissible. *Durkay v. Madco Oil Co., Inc.*, 862 S.W.2d 14, 24 (Tex.App.–Corpus Christi 1993, writ denied).

The State also maintains that the poem was not relevant and was more prejudicial than

probative. "Relevant" evidence in the punishment context is that which helps the jury "tailor the sentence to the particular offense" and "tailor the sentence to the particular defendant." *Rogers v. State*, 991 S.W.2d 263, 265 (Tex.Crim.App. 1999). The trial court has broad discretion in determining the admissibility of evidence, and its ruling should not be reversed on appeal absent a clear abuse of discretion. *Richards v. State*, 932 S.W.2d 213, 215 (Tex.App.–El Paso 1996, pet. ref'd).

In addition to the Rules of Evidence, the Code of Criminal Procedure, article 37.07, section 3(a)(1) governs the admissibility of evidence during the punishment phase and provides, regardless of the plea, and whether the punishment be assessed by the judge or the jury, evidence may be offered by the State and the defendant as to any matter the court deems relevant to sentencing.

The Code of Criminal Procedure does not define the term "relevant." *Rogers v. State,* 991 S.W.2d 263, 265 (Tex.Crim.App. 1999). Texas Rule of Evidence 401 assists us in determining what should be admissible under article 37.07, section 3(a). *Id.* Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.EVID. 401. The sentencing procedure presents different issues than a verdict of guilt or innocence; the jury or trial judge chooses from a punishment range, rather than deciding whether a defendant is guilty. *Rogers,* 991 S.W.2d at 265. In *Rogers,* the Court of Criminal Appeals observed that the definition of "relevant" within the Texas Rules of Evidence is not a perfect fit when compared to the punishment context. *Id.* (citing *Miller-El v. State,* 782 S.W.2d 892, 895-96 (Tex.Crim.App. 1990)), the Court stated:

> [A]dmissibility of evidence at the punishment phase of a non-capital felony offense is a function of policy rather than relevancy. This is so because by and large there are no discreet factual issues at the punishment stage. There are simply no distinct

'fact[s] . . . of consequence' that proffered evidence can be said to make more or less likely to exist. Rather, '[d]eciding what punishment to assess is a normative process, not intrinsically factbound.

*Rogers,* 991 S.W.2d at 265.

Accordingly, the determination of what is relevant should be a question of what is helpful to the jury in determining the proper sentence for a given defendant in a given case. *Id.*

In the instant case, the trial court did not abuse its discretion in excluding the love poem. We find that the court correctly excluded the poem in that it was not relevant to punishment and that the poem's impact on the jury could be to imply that the victim deserved her fate. *See Richards*, 932 S.W.2d at 215 (evidence the victim was not a "model citizen" was not relevant during punishment in a murder trial).

Appellant also maintains that the court abused its discretion in excluding the poem because it was relevant to show the prior relationship between the Appellant and the deceased. However, Appellant raises this theory for the first time on appeal. At trial the Appellant only preserved a complaint that the excluded poem was admissible under a state-of-mind theory. He failed to offer the poem as a "circumstance of the offense" under articles 37.07, § 3(a)(1) and 38.36(a).

To preserve a complaint for review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. *Nash v. State*, 123 S.W.3d 534, 537 (Tex.App.–Fort Worth 2003, pet. ref'd) (en banc) (plurality opinion).

Furthermore, even if the court erred in failing to admit the love poem, we find such error, if it was error, to be harmless. Under Texas Rule of Appellate Procedure 44.2(b), a non-constitutional error "that does not affect substantial rights must be disregarded." *See* Tex.R.App.P. 44.2(b). Substantial rights are not affected by the erroneous admission or exclusion of evidence if the

appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex.Crim.App. 2002). In the present case, there was abundant evidence concerning the Appellant's state of mind and the fact that there was a previous attachment between the deceased and another man. There was plentiful testimony before the jury concerning the deceased's attachment to another man living outside the country. Also, the psychologist Thomas Cook testified at length concerning Appellant's state of mind. We find no harm occurred. For all the reasons stated, Issue No. One is overruled.

In Issue No. Two, Appellant contends that the court erred in admitting evidence that the deceased told a co-worker that Appellant had threatened to kill her in that the statement was hearsay. One of the deceased's co-workers, Dr. Andrea Green, testified that on several occasions, the deceased had related to her that Appellant had told her that he was going to kill her. Appellant objected on the ground of hearsay. The State maintains the statement was an excited utterance.

Rule of Evidence 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX.R.EVID. 803(2).

> To determine whether a statement is an excited utterance, trial courts should determine "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition" when the statement is made. Factors that the trial court may consider include the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving.

*Apolinar v. State*, 155 S.W.3d 184, 186-87 (Tex.Crim.App. 2005) (quoting *Zuliani v. State*, 97 S.W.3d 589, 596 (Tex.Crim.App. 2003)). In the testimony at issue the deceased's co-worker testified that as medical director for the domestic violence program at the Texas Health Resources, the deceased had come into her office on at least five occasions over a period of a year and was

always very upset, visibly shaken and crying, would close the door and would state that the Appellant had talked to her about killing her and described to her what was going to happen and that the deceased knew for sure the Appellant was going to kill her. She stated that "if ever I get killed, if ever I die, I want you to know Ebenezer did it." At those times, the deceased appeared visibly upset and shaken and was clearly dominated by the excitement or fear of the Appellant's threats.

The period of time between the Appellant's threats and the deceased's statements is unclear. One of the factors the court may consider in determining whether a statement is an excited utterance is the length of time between the occurrence and the statement. "[W]hile the period of time that lapsed between the occurrence of the startling event and the making of the statement is a factor to consider in determining the admissibility of such statements, the critical factor is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event." *Gaines v. State*, 874 S.W.2d 733, 735 (Tex.App.–Houston [1st Dist.] 1994, no pet.); *Lawton v. State*, 913 S.W.2d 542, 553 (Tex.Crim.App. 1995).

The trial court heard ample testimony indicating that the deceased was afraid of the Appellant and that he had threatened her and that she knew he would eventually kill her. On each occasion when the deceased talked about the Appellant's threats to kill her, she appeared upset, visible shaken, crying, and distressed. The deceased was still dominated by the emotions, excitement, fear, or pain of the event of being threatened. The court did not abuse its discretion in admitting the statements as excited utterances.

However, even if the court erred in admitting the evidence, we find the error, if any, to be harmless. Again, we must disregard the error unless it affects Appellant's substantial rights. TEX.R.APP.P. 44.2(b). A relative of the victim, Tairu Ali, testified that the victim was fearful of Appellant. Stella Ogunleye, Appellant's cousin, testified that she had heard that Appellant had

threatened the victim. She knew and had also heard that the victim was afraid of Appellant. Dr. Andrea Green testified that the victim had expressed fear of Appellant to her on numerous occasions. The psychologist, Dr. Thomas Cook, stated that threats by Appellant against the victim were part of the relationship between the victim and Appellant. As such, we find no harm occurred. Accordingly, we overrule Issue No. Two.

### III. CONCLUSION

We affirm the judgment of the trial court.


GUADALUPE RIVERA, Justice

June 10, 2009

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)