# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00649-CR
## NO. 03-16-00650-CR

**Dennis Mike Cranfill, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COKE COUNTY, 51ST JUDICIAL DISTRICT
### NOS. CR15-01452 & CR15-01453,
### HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Dennis Mike Cranfill of the offenses of kidnapping and aggravated assault causing serious bodily injury.[1]  The district court rendered judgment on each verdict and sentenced Cranfill to 70 years' imprisonment for each offense, with the sentences to run concurrently.  In a single point of error on appeal, Cranfill asserts that the evidence is insufficient to prove that he caused serious bodily injury to the victim.  We will affirm the judgments of conviction.

### BACKGROUND

The jury heard evidence that on May 8, 2015, Deputies Anthony Lopez and Brandon Neal of the Coke County Sheriff's Office were dispatched to a residence occupied by Cranfill to

---

[1]  *See* Tex. Penal Code §§ 20.03, 22.02.

execute an outstanding warrant for his arrest. Lopez testified that, upon arrival, he stationed himself near the north entrance to the residence while Neal stationed himself near the south entrance. According to Lopez, they could not reach the doors to the residence because there was a corridor leading to each doorway that was enclosed by an iron gate and secured by "heavy duty chain." Lopez recounted that, after he and Neal announced their presence, he heard a "very, very loud scream" coming from the south entrance to the residence. Lopez proceeded to that entrance and observed a woman, later identified as Shannon Maddux, inside the gated corridor "yelling hysterically" and repeatedly screaming at the officers, "Get me out of here." Lopez testified that Maddux was "limping" and "having difficulty walking," although he "couldn't really see a visible injury" at that time. Lopez explained that he instructed another deputy to retrieve bolt cutters from his patrol vehicle so that he and Neal could break the chains around the gate and assist Maddux. As they began cutting the chains loose, Lopez recounted, they could hear a man inside the residence, later identified as Cranfill, yelling at the officers and telling them, "If you come in here, I've got something for you motherfuckers." Lopez testified that they were eventually able to open the gate, "extract" Maddux from the area, and escort her to a safe location for treatment. At that time, Lopez was able to observe "more significantly visible injuries on her body, which consisted of abrasive red marks along her neck," "extreme abrasive red marks on the lower side of her left thigh," and "dry, black blood that was inside her mouth" that Maddux "was trying to spit out."

Shortly thereafter, other officers arrived at the residence to assist the deputies in apprehending Cranfill, and he was subsequently arrested. Based on the above and other evidence, which we discuss in more detail below, the jury found Cranfill guilty of committing the offenses of

2

kidnapping and aggravated assault causing serious bodily injury. The district court rendered judgment on each verdict and, after finding two enhancement paragraphs alleging prior felony convictions to be true, sentenced Cranfill to 70 years' imprisonment for each offense, with the sentences to run concurrently as noted above. This appeal followed.

## STANDARD OF REVIEW

When reviewing the sufficiency of the evidence supporting a conviction, "the standard of review we apply is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[2] "This standard tasks the factfinder with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts."[3] "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them."[4] "On appeal, reviewing courts 'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'"[5] "Thus, '[a]ppellate courts are not permitted to use a "divide and conquer" strategy for evaluating sufficiency of the evidence' because that approach does not consider the cumulative force

---

[2] *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))*, cert. denied*, 136 S. Ct. 198 (2015).

[3] *Id*.

[4] *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007).

[5] *Murray*, 457 S.W.3d at 448 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

of all the evidence."[6] "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination."[7] Moreover, "[o]ur review of 'all of the evidence' includes evidence that was properly and improperly admitted."[8] Finally, "the same standard of review is used for both circumstantial and direct evidence cases."[9] "Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient" to support a conviction.[10]

## ANALYSIS

In his sole point of error, Cranfill asserts that the evidence is insufficient to prove that he had caused serious bodily injury to Maddux. "Serious bodily injury" is defined in the Penal Code as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."[11] Cranfill contends that the injuries sustained by Maddux were neither protracted nor life-threatening so as to satisfy that definition.

---

[6] *Id*. (quoting *Hacker v. State*, 389 S.W.3d 860, 873 (Tex. Crim. App. 2013)).

[7] *Id*. at 448-49 (citing *Hooper*, 214 S.W.3d at 12).

[8] *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016) (citing *Clayton*, 235 S.W.3d at 778).

[9] *Id*. (citing *Hooper*, 214 S.W.3d at 13).

[10] *Id*. (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

[11] Tex. Penal Code § 1.07(a)(46).

4

When deciding whether the evidence is sufficient to establish serious bodily injury, "the relevant inquiry is the degree of risk posed by the injury as it was inflicted[,] without regard to the positive effects of medical treatment."[12] For injuries that cause "protracted" loss or impairment of bodily function, the evidence must show only that the loss or impairment was "extended, lengthened, prolonged, or continued."[13] Moreover, "serious bodily injury may be established without a physician's testimony when the injury and its effects are obvious."[14]

In this case, Maddux testified to the nature and extent of her injuries. Maddux, who described herself as Cranfill's girlfriend, recounted that on the day of the assault, she went to Cranfill's residence and "brought him some stuff to drink, because [she] thought he was sick." After she arrived, Maddux noticed that Cranfill "wasn't [in] the best of moods," so she decided to leave. According to Maddux, Cranfill "[j]ust kind of got mad" as she departed, and "he grabbed [her] and drug [her] inside the house." Once they were inside, Maddux recalled, Cranfill "flipped out" and "just started yelling at [her]" and "beating on [her]" with a steel cable. According to Maddux, most of the hits that Cranfill inflicted were to her legs, and that she fractured her foot at some point during the assault. Maddux added that Cranfill choked her and bit her on the face during the assault, and he also knocked one of her teeth loose, although she claimed that the tooth "was kind of loose already."

---

[12] *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016) (citing *Brown v. State*, 605 S.W.2d 572, 575 (Tex. Crim. App. 1980)).

[13] *Nash v. State*, 123 S.W.3d 534, 538 (Tex. App.—Fort Worth 2003, pet. ref'd) (citing *Moore v. State*, 739 S.W.2d 347, 352 (Tex. Crim. App. 1987)).

[14] *Blea*, 483 S.W.3d at 35 (citing *Sizemore v. State*, 387 S.W.3d 824, 828 (Tex. App.—Amarillo 2012, pet. ref'd)).

When asked how long her broken foot affected her, Maddux testified, "Probably about a month and a half, two months, maybe; something like that. I don't know." Maddox added that she went to the hospital following the assault but "only took a couple of days off" from work. Maddux also testified that as a result of her injuries, one of her legs was in a cast and she had to use crutches, although she was uncertain of the amount of time that she had actually worn the cast and used the crutches. Maddux explained that the cast was "uncomfortable" and she "could get more done walking around hobbling without it, than [she] could with it, so [she] would take it off." Maddux similarly testified that she "could get around better without" the crutches than with them, so she "didn't use the crutches like [she] should have." In addition to Maddux's testimony, photos were admitted into evidence showing bruises to Maddux's neck, chest, arms, and legs that she had suffered as a result of the assault. Moreover, Texas Ranger Nick Hanna, who had investigated the incident and interviewed Maddux the day after the assault, testified that Maddux was in noticeable pain when he spoke with her and "was having difficulty getting around." According to Hanna, "She kind of reminded me of a football player the day following a rough football game. She was beat up and sore and moving pretty gingerly." Hanna also corroborated Maddux's testimony that she had "suffered a fracture" of her foot during the assault and "was on crutches" as a result.

Viewing the above evidence and all reasonable inferences therefrom in the light most favorable to the verdict, we conclude that it is sufficient to prove that Cranfill caused Maddux serious bodily injury. Maddux testified that she suffered a fractured foot that adversely affected her ability to walk for approximately six weeks to two months following the assault, that she wore a cast and used crutches for at least some of that time, and that, even when she was not wearing the cast

6

and using the crutches, she was "walking around hobbling." This testimony, combined with the photos that were admitted into evidence showing the extent and severity of the bruising to Maddux's body, as well as Deputy Lopez's and Ranger Hanna's testimony summarizing their observations of Maddux's injuries following the assault, supports the jury's finding that Maddux suffered a "protracted loss or impairment of bodily function" as a result of the assault. Accordingly, the evidence is sufficient to prove that Cranfill committed the offense of aggravated assault causing serious bodily injury.[15]

We overrule Maddux's sole point of error.

## CONCLUSION

We affirm the judgments of the district court.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Goodwin

Affirmed

Filed:   July 14, 2017

Do Not Publish

_____

[15] *See, e.g.*, *Brown*, 605 S.W.2d at 574-75; *Williams v. State*, 575 S.W.2d 30, 33 (Tex. Crim. App. 1979); *Jackson v. State*, 399 S.W.3d 285, 291-92 (Tex. App.—Waco 2013, no pet.); *Sizemore*, 387 S.W.3d at 829-30; *Nash*, 123 S.W.3d at 539-40; *Taylor v. State*, 71 S.W.3d 792, 795-96 (Tex. App.—Texarkana 2002, pet. ref'd); *Madden v. State*, 911 S.W.2d 236, 244 (Tex. App.—Waco 1995, pet. ref'd); *Coshatt v. State*, 744 S.W.2d 633, 636 (Tex. App.—Dallas 1987, pet. ref'd); *Allen v. State*, 736 S.W.2d 225, 227 (Tex. App.—Corpus Christi 1987, pet. ref'd); *see also Mickey v. State*, No. 12-06-00130-CR, 2006 Tex. App. LEXIS 8493, at *5-7 (Tex. App.—Tyler Sept. 29, 2006, no pet.) (mem. op., not designated for publication).