PD-0166-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/1/2015 11:24:22 AM
Accepted 4/1/2015 5:19:04 PM
ABEL ACOSTA
CLERK

**IN THE**

**TEXAS COURT OF CRIMINAL APPEALS**

Bryan William Reed

      Petitioner,

vs.                          No._____

The State of Texas

      Respondent.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PETITION FOR DISCRETIONARY REVIEW**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FILED IN
COURT OF CRIMINAL APPEALS

April 1, 2015

ABEL ACOSTA, CLERK

Fasoro Law, PLLC

Kunle Fasoro
SBN: 24086455
8330 LBJ Fwy, Suite 290
Dallas, TX 75243
214-705-3475
Fax: 214-705-3472
kfasoro@fasorolaw.com

**PETITIONER REQUESTS ORAL ARGUMENT**

1

## TABLE OF CONTENTS

Identities of Parties                                          2,3

Index of Authorities                                          3,4,5

Statement Regarding Oral Argument                             5

Statement of the Case                                        5

Statement of Procedural History                             5

Grounds for Review                                          5,6

Argument                                                    7

A. Evidence was insufficient for identity                   7
B.  Petitioner did not act knowingly or recklessly          7
C.  Dispute that Assault was Aggravated                     8
D.  Review of the legal sufficiency is a matter of law      9
E.  State must prove each element                          10
F.  Third Party did not corroborate testimony              11
G.  Court of Appeals Erred                                 12

**IDENTITIES OF THE PARTIES AND COUNSEL**

Bryan William Reed-      Petitioner

Kunle Fasoro-            Attorney for Petitioner for PDR
                        8330 LBJ Freeway Suite 290 Dallas, TX 75243
                        PH: 214-705-3475   Fax: 214-705-3472

Philip D. Ray, Attorney for Appellant on Appeal, 3131 McKinney Avenue, Suite 825, Dallas, Texas 75204; phone (214) 416-9100; fax (214) 416-9107; email: PhilipDRayLaw@gmail.com.

Philip D. Ray, Attorney for Appellant at Trial

Kristin R. Brown, Attorney for Appellant on Appeal, 3131 McKinney Avenue, Suite 825, Dallas, Texas 75204; phone (214) 416-9100; fax (214) 416-9107; email: kbrown@idefenddfw.com.
Kristin R. Brown, Attorney for Appellant at Trial.

Greg Willis, Collin County District Attorney, Attorney for State of Texas, 2100 Bloomdale Road, Suite 100, McKinney, Texas 75071; phone (972) 548-4323; fax (214) 491-4860.

John Rolater, Collin County Assistant District Attorney, Appellate Section, Attorney for State of Texas on Appeal, 2100 Bloomdale Road, Suite 100, McKinney, Texas 75071; phone (972) 548-4323; fax (214) 491-4860.

Ashley Keil, Collin County Assistant District Attorney, Attorney for State of Texas at Trial, 2100 Bloomdale, Suite 100, McKinney, Texas 75071; phone (972) 548-4323; fax (214) 491-4860.

Hon. Benjamin N. Smith, Presiding Judge of the 380th Judicial District Court, 2100 Bloomdale, Suite 30132, McKinney, Texas 75071; phone (972) 548-4762; fax (972) 547-5733.

Court of Appeals Fifth District Judges:
Justice Ada Brown
Justice Elizabeth Lang-Miers
Justice O'Neil
600 Commerce, Ste 200, Dallas 75202-4658
(214) 712-3400
Fax:   (214) 745-1083

## INDEX OF AUTHORITIES

**CASES**

*Adames v. State*, 353 S.W.3d 854, 859-860 (Tex. Crim. App. 2011)

*Allen v. State*, 651 S.W.2d 267, 269-270 (Tex. Crim. App. 1983).

*Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992)

*Brooks v. State*, 323 S.W.3d at 912

*Carlsen v. State*, 654 S.W.2d 444, 448 (Tex. Crim. App. 1983) (*opinion on rehearing*

*Foster v. State*, 635 S.W.2d 710, 717 (Tex. Crim. App. 1982)

*Garza v. State*, 715 S.W.2d 642, 645 (Tex. Crim. App. 1986)

*Gold v. State*, 736 S.W.2d 685 (Tex. Crim. App. 1987)

*Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001)

*Hudson v. United States*, 522 U.S. 93, 98-99 (1997)

*Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979)

*Jackson v. Virginia*, 443 U.S. at 319

*Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012)

*Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009)

*McFarland v. State*, 930 S.W.2d 99, 100 (Tex. Crim. App. 1996)

Moore v. State, 739 S.W.2d 347. 349 (Tex.Crim. App. 1987).

*Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992).

*Ortiz v. State*, 577 S.W.2d 246, 250 (Tex. Crim. App. 1979)

*Torres v. State*, 785 S.W.2d 824 (Tex. Crim. App. 1989)

**STATUTES**

TEX. PENAL CODE ANN. § 22.0l(a)(l), 22.02(a)(l) (West 2011 & Supp. 2014)

U.S. Const. Amend. V & XIV

**Rules**

Tex. Code Crim. Proc. Art. 44.25

Tex. Rule App. Proc. 43.2(c).

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes that oral arguments will be helpful to the court because the facts and legal arguments have not been presented adequately in the trial court or on appeal. Appellant also believes that oral arguments will allow the Court to ask questions and thoroughly discuss the facts and legal arguments

## STATEMENT OF THE CASE

This case concerns a conviction for Aggravated Assault. At trial, the State sought and received a conviction for Aggravated Assault and a sentence of seven years. This Conviction was affirmed by the Court of Appeals, holding that there was sufficient evidence to support the conviction. This Petition challenges that holding.

## STATEMENT OF PROCEDURAL HISTORY

(1)     Date of opinion from Court of Appeals:          December 5, 2014

(2)     Motion for a Rehearing                      December 19, 2014

(3)     Date Motion for Rehearing disposed        January 29, 2015

**GROUNDS FOR REVIEW**

1.      There is insufficient evidence to support a conviction for aggravated assault. The State failed to prove that petitioner was the person who attacked the victim. Without such proof, a conviction is improper.

2.      The Appeals court incorrectly affirmed the finding of serious bodily harm. The assault would not rise to aggravated assault if the resulting injury did not rise to the level of serious bodily harm

**Argument**

This court should grant a review of the Court of Appeals decision to affirm the Trial Courts conviction of the petitioner. We feel that that the Appeals court decision to focus solely on the testimony of the petitioner. The Appeals Court found that the petitioners testimony was sufficient to satisfy the "beyond a reasonable doubt standard of evidence.

We argue that the petitioner's testimony alone should not have been legally sufficient to support a conviction. The Court of Appeals should have required more evidence to affirm the decision. For the Court of Appeals to have affirmed the conviction in the trial court, they must have been satisfied that the evidence at the trial court was sufficient to prove that the petitioner intentionally, knowingly, or recklessly caused serious bodily injury to the victim. See TEX. PENAL CODE ANN. § 22.0l(a)(l), 22.02(a)(l) (West 2011 & Supp. 2014) we assert that there was not enough evidence to prove beyond a reasonable doubt that the petitioner acted intentionally, knowingly or recklessly. Secondly, we dispute the Court of appeals opinion affirming the trial courts conviction of Aggravated assault. We assert that there was insufficient evidence to affirm that the assault caused serious bodily harm; we believe that it caused just bodily injury. Serious bodily injury" is bodily injury that "creates a substantial risk of death or that causes

death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Id. § l.07(a)(46). Additionally, The difference between "bodily injury" and "serious bodily injury" is one of degree. Moore v. State, 739 S.W.2d 347. 349 (Tex.Crim. App. 1987). The Court of Appeals erred in affirming the trial courts findings that there was sufficient evidence to determine that the assault rose to a level that would constitute serious bodily injury.

1. To determine the whether evidence is legally sufficient, the appellate court must determine whether any trier of fact could have found the essential elements of the crime beyond a reasonable doubt", and not whether the appellate court "believes that the evidence at the trial established guilt beyond a reasonable doubt." *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009), *quoting Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979); *Brooks v. State*, 323 S.W.3d at 912; *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Carlsen v. State*, 654 S.W.2d 444, 448 (Tex. Crim. App. 1983) (*opinion on rehearing*). After "giving proper deference" to the role of the trier of fact, an appellate court must "uphold the verdict unless a rational fact finder

must have had reasonable doubt as to any essential element." *Laster v. State*, 275 S.W.3d at 518, *citing Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992).

Although based upon a review of the facts, review of the legal sufficiency of evidence is a determination of law. *Allen v. State*, 651 S.W.2d 267, 269-270 (Tex. Crim. App. 1983). An appellate court must always address challenges to the sufficiency of the evidence. *Garza v. State*, 715 S.W.2d 642, 645 (Tex. Crim. App. 1986). Such a review must be conducted when a legal sufficiency challenge is raised, even if the conviction must be reversed on other grounds, because a finding that the evidence is legally insufficient to support the conviction prevents a retrial under the double jeopardy clause of the Fifth Amendment. *Hudson v. United States*, 522 U.S. 93, 98-99 (1997); U.S. Const. Amend. V & XIV; *Ortiz v. State*, 577 S.W.2d 246, 250 (Tex. Crim. App. 1979); *Foster v. State*, 635 S.W.2d 710, 717 (Tex. Crim. App. 1982); *McFarland v. State*, 930 S.W.2d 99, 100 (Tex. Crim. App. 1996). And should an appellate court find that the verdict is contrary to the evidence presented at trial, the court is empowered to reverse the conviction and enter a judgment of acquittal. Tex. Code Crim. Proc. Art. 44.25; Tex. Rule App. Proc. 43.2(c).

Evidence is legally sufficient only if the state has affirmatively proven each of the essential elements of the offense. *Gold v. State*, 736 S.W.2d 685 (Tex. Crim. App. 1987), *overruled on other grounds* in *Torres v. State*, 785 S.W.2d 824 (Tex. Crim. App. 1989); *Jackson v. Virginia*, 443 U.S. at 319; *Adames v. State*, 353 S.W.3d 854, 859-860 (Tex. Crim. App. 2011). And the State's case falls short if there is a material variance between the indictment allegations and the proof at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001); *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012). This occurs when a statute specifies alternate methods by which an offense could be committed, the charging instrument pleads one of those alternate methods, but the State proves, instead, an un-pled method. *Id.*

Issue One-

In the Opinion, the Court of appeals states that upon a reviewing the facts, review of the evidence is a determination of law. An appellate court must always address challenges to the sufficiency of the evidence. In their analysis, the Court of Appeals concluded that the trial court could have found beyond a reasonable doubt that petitioner, and not the other party that was present at the scene of the assault was the person

10

who hit the victim. The Court of appeals, in their review, considered all the evidence presented during the trial in the light most favorable to the verdict. In this case, there was more than sufficient evidence to show that there was a second person at the scene that caused the accident.

Any third party did not corroborate the Testimony of the petitioner at the trial that he was the person who hit the victim. The other person at the scene, Ms. Kennard should have been required to testify. In addition to this, the Victim, Mr. Soultaire was not aware of who hit him. Mr. Soultaire was struck with his back to petitioner and Ms. Kennard.

Issue 2

In Regards to the Second issue of whether the attack rose to the level of aggravated assault, we argue that it does not. The Court of appeals concluded that the injury Soultaire suffered to his right eye met the definition of a "Serious bodily injury". We argue that the Court of appeals erred in their conclusion. In his Testimony, the eye doctor, Teska acknowledged that he did not know whether the rapid growth of the cataract was the "result of trauma, or a rapid increase by the trauma, or maybe the victim was just a guy who grows cataracts quickly".

Teska's inability to definitively testify that this was a direct result of the assault, makes this evidence one that does not pass beyond a reasonable doubt standard.

The Court of Appeals dismisses this in their analysis. Furthermore the court does not give enough weight in their analysis to Dr. Trans's testimony that she although she believed the concussions the victim sustained created a substantial risk of death at the time she filled out the police forms, she no longer felt that he was still at risk of dying. The evidence also does not show that the victim's injuries caused serious permanent disfigurement. This is a requirement for the assault to reach the level of "serious bodily injury".

The Court of Appeals failed to hold the trial courts decision to the standards that have been required through precedence. The evidence was insufficient to prove the identity of the assailant, in addition, they evidence was insufficient to prove "Serious bodily harm. Therefore reversal is proper in this petition.

**PRAYER FOR RELIEF**

This Petition should be granted

12

The evidence was insufficient to prove the identity of the person who assaulted the victim.

Additionally, the injuries suffered by the victim did to "serious bodily injury'", therefore the charge and conviction should have been for Assault and not Aggravated Assault.

The conviction based on insufficient evidence should be overturned.

Petitioner also requests such other and further relief as is just.

RESPECTFULLY SUBMITTED

FASORO LAW, PLLC


/S/ Kunle Fasoro
KUNLE FASORO
SBN 24086455
8330 LBJ Freeway, Suite 290
Dallas, Texas 74243
214-705-3475
Fax 214-705-3472
kfasoro@fasorolaw.com


**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2015, a copy of the foregoing Petition for Discretionary Review was served on the following by Electronic Service (E-Mail):

John Rolater
Collin County District Attorney
Appellate Division
 E-Mail: jrolater@co.collin.tx.us

/s/Kunle Fasoro
Kunle Fasoro

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this petition conforms to the requirements of TRAP 9 and consists of  2015  words per TRAP 9.4(i)(2)(D).

/s/Kunle Fasoro
Kunle Fasoro

**IN THE**

# TEXAS COURT OF CRIMINAL APPEALS

Bryan William Reed

      Petitioner,

vs.                                       No._____

The State of Texas

      Respondent.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## APPENDIX FOR

## PETITION FOR DISCRETIONARY REVIEW

INDEX

1-12       COURT OF APPEALS OPININON AND JUDJEMENT



In The

## Court of Appeals
## Fifth District of Texas at Dallas

_____

### No. 05-13-01509-CR

_____

### BRYAN WILLIAM REED, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court
Collin County, Texas
Trial Court Cause No. 380-80243-2013

## MEMORANDUM OPINION

Before Justices O'Neill, Lang-Miers, and Brown
Opinion by Justice Brown

After a bench trial, the trial court convicted Bryan William Reed of the offense of aggravated assault causing serious bodily injury and sentenced him to seven years in prison. Appellant raises two issues on appeal in which he challenges the sufficiency of the evidence to support his conviction. We affirm.

### Background

The complainant was Dana Soultaire, who was sixty-two years old at the time of trial. Soultaire testified that around two o'clock or two-thirty in the morning on November 3, 2012, he woke up to loud music coming from another apartment in his building. After determining the source of the noise, he knocked on the door of that apartment so he could ask them to turn the music down. Soultaire knocked on the door three times before a woman named Amber Kennard

responded. Soultaire testified that when Kennard opened the door, he was able to say only "shh, could you please turn down your music, I'm trying to sleep" before Kennard "went into [a] screaming and cussing tirade." Soultaire recounted that as he was telling Kennard that he would just call the police to have them take care of the noise, a man, later identified as appellant, stepped out and confronted him by asking why Soultaire was "talking to [his] woman like that." Soultaire described appellant as having a hostile look on his face, and because Soultaire sensed that this was a situation that he "didn't need to be in," Soultaire started to back away from the apartment.

According to Soultaire, appellant approached him in a menacing manner and followed Soultaire as he backed away; Kennard, who continued to scream and cuss, was behind appellant. Soultaire said he tried "to talk sense to the man" and told appellant to "just leave him alone." Soultaire testified that when he turned his back, appellant hit him in the back of his head. Soultaire fell to the ground and was knocked unconscious. Soultaire remembered waking up on the lawn with his face covered in blood. He crawled back to his apartment, and his wife called the police. Soultaire was taken to the hospital.

Appellant denied following Soultaire, but he admitted to hitting Soultaire in the eye and head. Appellant testified that he was intoxicated and did not know why he hit Soultaire. Appellant said "it felt natural to me to duck and just hit him" because Soultaire was screaming at Kennard and "calling her the B word." Appellant testified that when he hit Soultaire in the eye, Soultaire fell back to the ground. Appellant then immediately "ran right on top of him" and hit Soultaire four times in the head. Appellant said the additional hits were his "natural response" and that he did not think about whether Soultaire was conscious at that point. Appellant did not remember kicking or stepping on Soultaire. Appellant agreed that he did not hit Soultaire in self-defense; he testified that the only reason he could think of as to why he hit Soultaire was because

–2–

Soultaire was "so disrespectful with [Soultaire] calling [Kennard] a bitch" when appellant tried to speak with him. Appellant also agreed he was acting like a punk and admitted it was a mistake to hit Soultaire.

Soultaire's injuries included a cut to the back of his head that took seven to eight staples to close, a laceration over his eye that required stitches, a gash across his nose, and bruising on his face, ear, neck, and chest. His medical records reflected that he also had a "large hematoma at [the] base left neck and across left clavicle in the imprint of a shoe." Soultaire further described damage to the lens of his right eye. He explained that the lens was dislodged from his retina such that he cannot focus properly. Soultaire said that as a result of the damage, his vision is blurry, he has a "halo effect" from lights at night, and he has double vision. He testified that he also suffers severe headaches.

Dr. Lamyen Tran, Soultaire's family doctor, saw Soultaire three days after the assault. Tran testified that Soultaire had "lots of facial bruising," a blackened and swollen right eye, a large scalp laceration that was stapled shut, a swollen left wrist and hand, a jammed index finger, and rib bruising. He also had a hematoma on his eyeball. Tran explained that because Soultaire exhibited concussion symptoms, blurry vision, and a headache, she took a CT scan of his head. The CT scan was clear, so her plan was to monitor those symptoms and use medication for Soultaire's pain.

Tran continued to treat Soultaire. She explained that although she had treated Soultaire for headaches in the past, she had a tough time controlling his headaches following the assault; the medications, which traditionally would have improved those headaches, were not helping. She testified that Soultaire also was experiencing insomnia and that his blurry vision continued.

The local police department asked Tran to fill out forms related to Soultaire's injuries. Tran testified that at the time she filled out the forms, she thought the bodily injury Soultaire

–3–

suffered created a substantial risk of death because of the concussion. She explained that Soultaire continued to have blurry vision and headaches and she was worried that Soultaire would have permanent organic brain damage or changes. She was not sure whether the damage would heal or "go on to be chronic, potentially life-threatening problems." She clarified that although she did not think there was a risk of death anymore, the long-term health problems related to the concussion were unclear.

Tran also testified that she believed Soultaire sustained a protracted loss or impairment in the function of his vision, adding that it was unclear whether Soultaire's vision would go back to normal. She further confirmed that she feared the assault on Soultaire would affect his mental health. Tran explained that Soultaire was in "bad shape," in pain, and suicidal at times. She said he also showed signs of Post-Traumatic Stress Disorder, was agoraphobic, afraid to drive, and jumpy. She said she saw deterioration in Soultaire's overall health as a result of the assault.

Soultaire went to an ophthalmologist, Dr. Lyle Teska, about two weeks after the assault. During the initial exam, Teska diagnosed Soultaire as having a condition called iritis, which is an inflammation inside the eye that is treated with eye drops. The inflammation cleared with the drops, but during a follow-up visit three weeks later, Teska observed "the very beginnings of a cataract in his right eye." At his next appointment two months later, Soultaire complained of difficulty with his vision. Teska confirmed that Soultaire had a cataract that had progressed faster than expected over the previous two months. Teska diagnosed Soultaire with a traumatic cataract, explaining that a cataract "is a very common result of trauma" to the eye.

Teska testified that at the next appointment three months later, Soultaire's vision had declined, and the cataract had "significantly worsened." Teska said that this was "rapid growth" for a cataract and if left untreated, Soultaire's vision would likely continue to get worse and would result in a protracted loss or impairment in the function of Soultaire's eye. Teska

-4-

recommended that the cataract be surgically removed and referred Soultaire to a specialist for the surgery. Teska explained that with an eye that has been traumatized, the surgery is "more demanding" and Soultaire faced a higher risk of complications. Teska agreed that he did not know whether the rapid growth of the cataract was the "result of the trauma, or, rapid increase by the trauma, or maybe [Soultaire's] just a guy who grows cataracts quickly." But Soultaire had reported being hit in the head and eye several times, and Teska had objectively observed the decline in Soultaire's vision and the rapid growth of the cataract.

## Sufficiency of the Evidence

On appeal, appellant challenges the sufficiency of the evidence to support his conviction for aggravated assault causing serious bodily injury. Specifically, he contends that the evidence is insufficient because the State failed to prove that (1) appellant was the person who struck Soultaire (Issue One) and (2) Soultaire suffered serious bodily injury caused by appellant (Issue Two).

### *Legal Standards and Applicable Law*

We review appellant's sufficiency challenge by considering all the evidence in the light most favorable to the verdict; based on that evidence and any reasonable inferences, we must determine whether a rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014). Under this standard, the fact finder has full responsibility for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. We presume the fact finder resolved any conflicts in the evidence in favor of the verdict and defer to that determination. *See id.* at 326. We do not reassess witness credibility. *Thornton*, 425 S.W.3d at 303.

To obtain a conviction for aggravated assault as charged in this case, the State was required to prove beyond a reasonable doubt that appellant intentionally, knowingly, or recklessly caused serious bodily injury to Soultaire by striking Soultaire on the head with appellant's hand and by knocking Soultaire to the ground and kicking him in the torso. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(1) (West 2011 & Supp. 2014). "Bodily injury" means "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (West Supp. 2014). "Serious bodily injury" is bodily injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). The difference between "bodily injury" and "serious bodily injury" is one of degree. *Moore v. State*, 739 S.W.2d 347, 349 (Tex. Crim. App. 1987). To determine whether an injury constitutes a "serious bodily injury," we assess the facts on a case-by-case basis; we evaluate "each case on its own facts" to resolve whether the evidence was sufficient to permit the fact finder to conclude that the injury fell within that definition. *Sizemore v. State*, 387 S.W.3d 824, 828 (Tex. App.—Amarillo 2012, pet. ref'd) (citing *Moore*, 739 S.W.2d at 352); *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.— Houston [14th Dist.] 2006, pet. ref'd).

"For there to be protracted [loss or] impairment such that a finding of serious bodily injury is proper, the organ or bodily member must lose some function." *Andrus v. State*, Nos. 05-08-00703-CR, 05-08-00704-CR, 2010 WL 797196, at \*2 (Tex. App.—Dallas Mar. 10, 2010, no pet.) (citing *Hernandez v. State*, 946 S.W.2d 108, 113 (Tex. App.—El Paso 1997, no pet.)). "Protracted" loss of function need not be permanent loss; rather, a "protracted" loss or impairment is an injury that is "either continuing, dragged out, drawn out, elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn, never-ending, ongoing, prolix, prolonged, or unending." *Moore*, 739 S.W.2d at 352 (describing the common meaning of the

–6–

word "protracted"); *see also Nash v. State*, 123 S.W.3d 534, 538 (Tex. Crim. App. 2003) (explaining that in *Moore*, the court of criminal appeals said "protracted" means "extended, lengthened, prolonged, or continued"). The relevant issue is the "impairing quality of the bodily injury as it was inflicted, not after the effects have been ameliorated or exacerbated by other actions such as medical treatment." *Nash*, 123 S.W.3d at 539 (citing *Brown v. State*, 605 S.W.2d 572, 575 (Tex. Crim. App. [Panel Op.] 1980), *overruled on other grounds by Hedicke v. State*, 779 S.W.2d 837 (Tex. Crim. App. 1989)). The person who sustained the injuries is qualified to offer an opinion about the seriousness of the injuries. *See Hart v. State*, 581 S.W.2d 675, 677 (Tex. Crim. App. [Panel Op.] 1979).

### *Analysis*

Appellant argues in his first issue that the evidence is insufficient to support his conviction because the State did not prove that it was appellant who struck Soultaire on the head with a hand, knocked Soultaire to the ground, or kicked Soultaire in the torso. He claims that based on Soultaire's testimony that Kennard was "with" appellant when Soultaire backed away and that Soultaire had turned his back to appellant so he did not see appellant hit him, the evidence does not exclude the possibility that Kennard was the offending party. We disagree.

Appellant admitted that he was the person who hit Soultaire, testifying that "I intentionally hit him with my fist. That was me." Appellant specifically described hitting Soultaire one time in the face in response to Soultaire's "disrespect" to Kennard and then hitting Soultaire four more times in the head after Soultaire fell to the ground. Appellant hit Soultaire additional times without considering whether Soultaire was unconscious at the time, and he acknowledged that Soultaire's injuries to the back of his head probably "came from" when Soultaire fell back after appellant hit him. Although appellant claimed he did not recall stomping on or kicking Soultaire, he admitted he saw the pictures showing Soultaire's injuries, and

–7–

Soultaire's medical records confirmed Soultaire had injuries on his torso "in the imprint of a shoe." Appellant also testified that when he "got off" of Soultaire after hitting him four additional times, Kennard was "gone." And when appellant "tried to walk back in" the apartment, Kennard had locked the door. Appellant said he was intoxicated that night, acted like a "punk," and he "want[ed] to take full responsibility" for what he did.

In arguing that the evidence does not exclude Kennard as the person who hit Soultaire, appellant emphasizes that his testimony—during which he admitted that he was the person who hit Soultaire—came after the trial court denied his motion for directed verdict. After the State rested, appellant moved for directed verdict, arguing that "there were two people there," both of whom were described as aggressive, and the State did not prove who caused the injury. Appellant contends that "[w]hen—during a trial before the court—the Court denies a motion for directed verdict, the Court is, in essence, issuing a verdict of guilt" such that his testimony becomes nothing more than punishment testimony. As support, he cites *Leday v. State*, 983 S.W.2d 713, 725–26 (Tex. Crim. App. 1998), in which the Texas Court of Criminal Appeals held that a defendant's admission of guilt at the punishment stage of trial does not result in waiver of alleged error during the guilt phase of a trial. Appellant claims that the court's denial of the direct verdict was a comment on the weight of the evidence and at that point, the court essentially has "found the defendant guilty of the crime charged."

Nothing in this record shows that the trial court "believe[d] the State [had] . . . proved all the elements of the case beyond a reasonable doubt" at the time it denied appellant's motion for directed verdict as appellant contends. Evidence is considered punishment evidence only after a guilty verdict is rendered. Here, appellant testified twice—during the guilt-innocence phase and the punishment phase of trial. During the guilt-innocence phase of trial, he testified that he was the person who hit Soultaire, that he was "wrong" for doing so, and that he would take "full

–8–

responsibility" for what he did. Appellant also confirmed in his testimony that Kennard had returned to the apartment. In our sufficiency review, we consider all the evidence presented during trial in the light most favorable to the verdict. *Jackson*, 443 U.S. at 319. Based on the evidence discussed above, we conclude the trial court could have found beyond a reasonable doubt that appellant, not Kennard, was the person who hit Soultaire, knocked him down, and kicked him. We resolve appellant's first issue against him.

In his second issue, appellant argues the evidence is insufficient to support his conviction because the State did not prove that Soultaire suffered from a permanent disfigurement or protracted loss or impairment caused by appellant. He contends that Soultaire's primary complaints after the incident were headaches, blurry vision, migraines, and discomfort and that the "vision impairment symptoms were effects Soultaire was experiencing prior to the incident." Appellant also contends that Teska's testimony did not establish with any medical certainty whether the traumatic cataract was caused by appellant's actions or affected by his actions.

The evidence does not show that the injuries sustained by Soultaire created a substantial risk of death or cause death. TEX. PENAL CODE ANN. § 1.07(a)(46). Tran testified that although she believed the concussion Soultaire sustained created a substantial risk of death at the time she filled out the police forms, she no longer thought he still was "in risk of death" because of the concussion. Nor does the evidence show that Soultaire's injuries caused serious permanent disfigurement. *Id.* So, for appellant's conviction for aggravated assault to stand, the record must reflect legally sufficient evidence that Soultaire suffered a protracted loss or protracted impairment of a bodily member or organ. *See Nash*, 123 S.W.3d at 538–39. We conclude that it does. Specifically, we conclude that the record reflects Soultaire suffered protracted impairment in the function of his right eye.

Soultaire testified, and his medical records showed, that he suffered trauma to his right eye after appellant hit him in the face and head. Teska saw Soultaire two weeks after the assault at which time Soultaire complained of blurred vision and informed Teska he was having trouble with bright lights. Soultaire also reported repeated problems with his vision at subsequent appointments over a period of six months after the assault. Soultaire's vision prevented him from driving at night, and he had difficulty reading or watching television. He also said his vision problems forced him to retire.

Teska testified that after some inflammation had cleared in Soultaire's eye, he noticed the beginnings of a cataract. In subsequent visits, Teska observed that Soultaire's cataract had progressed faster than expected and testified that this was "a very common result of trauma" such that he diagnosed Soultaire with a traumatic cataract. Within six months after the assault, Soultaire's vision declined further and the cataract had significantly worsened. Teska said if left untreated, Soultaire's vision would likely continue to get worse. And Teska agreed that this would be a protracted loss or impairment in the function of Soultaire's eye.

Although Teska acknowledged on cross examination that he did not know whether the rapid growth of the cataract was the "result of the trauma, or, rapid increase by the trauma, or maybe [Soultaire's] just a guy who grows cataracts quickly," he testified that Soultaire had reported being hit in the head and eye several times, and Teska had objectively observed the decline in Soultaire's vision and the rapid growth of the cataract, which was commonly the result of trauma. Appellant testified he hit Soultaire multiple times in the face and head, and Soultaire said that the damage to his eye was caused by trauma. There is no dispute that the eye with the vision problems is the same eye that was injured during the assault.

The evidence also shows that Soultaire's problems with his vision came after the assault, and he testified to the continuing effects he suffered. He testified that before the assault his

-10-

vision was "excellent," but after the assault, his eye was damaged such that he cannot focus properly, he had a halo effect from nighttime lights, and he has double vision. These effects were present at the time he testified at trial, which was almost a year after the assault. Soultaire said that he was told that surgery was required to prevent him from going blind in that eye.

When we consider the evidence in the light most favorable to the verdict, we conclude that a rational fact finder could have concluded that the injury Soultaire suffered to his right eye met the definition of a "serious bodily injury" and this injury was caused by appellant's actions. We resolve appellant's second issue against him.

Having resolved both of appellant's sufficiency challenges against him, we affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

131509F.U05

−11−



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRYAN WILLIAM REED, Appellant

No. 05-13-01509-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court, Collin County, Texas
Trial Court Cause No. 380-80243-2013.
Opinion delivered by Justice Brown. Justices O'Neill and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 5th day of December, 2014.