1109-15

ORIGINAL

NO. PD-_____

IN THE

COURT OF CRIMINAL APPEALS

FOR THE STATE OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 29 2015

Abel Acosta, Clerk

From Cause No. 11-13-00220-CR
11th Court of Appeals, Eastland, Texas

-------------------------------------------------------------

MICHAEL DEWAYNE CARELL ,

PETITIONER

FILED IN
COURT OF CRIMINAL APPEALS

OCT 29 2015

Abel Acosta, Clerk

V.

THE STATE OF TEXAS,

APPELLEE

---

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

---

PETITIONER PRO-SE:  MICHAEL DEWAYNE CARELL #1863720

ALLRED UNIT

2101 FM 369 N.

Iowa Park, Tx. 76367

# TABLE OF CONTENTS

Names of all interested parties                                      2

Statement regarding Oral Argument                                    4

Statement of Procedural History                                      5

Statement of the Case                                                5

Questions For Review                                                 8

I.    DID THE 11th COA ERROR IN AFFIRMING THE APPELLANT'S
      CONVICTION BASED ON A DECISION THAT CONFLICTS WITH THE
      DECISION WITH ANOTHER COA'S ON THE SAME MATTER?

II.   WHETHER THE 11th COA DECIDED AN IMPORTANT QUESTION OF STATE
      OR FEDERAL LAW THAT HAS NOT BEEN, BUT SHOULD BE SETTLED BY
      THE COURT OF CRIMINAL APPEALS?

III.  WHETHER THE 11th COA DECIDED AN IMPORTANT QUESTION OF
      STATE OR FEDERAL LAW IN CONFLICT WITH THE APPLICABLE
      DECISIONS OF THE COURT OF CRIMINAL APPEALS OR THE
      UNITED STATES SUPREME COURT?

IV.   WHETHER THE DECISION RENDERED BY THE 11th COA IS IN
      CONFLICT WITH THIS HON. COURT'S RULING SET FORTH
      IN: MENDEZ V. STATE, 138 S.W.3d 334 (Tex.Crim.App.2004),
      THAT THE ISSUANCE OF AN ORDER OF REFERRAL TO A MAGISTRATE
      UNDER TEX.GOV'T CODE ANN. § 54.657, IS A SYSTEMIC RIGHT
      THAT ACCORDING TO THE TEXAS COURT OF CRIMINAL APPEALS
      CANNOT BE WAIVED OR FORFEITED?

      [Tex.R.App.Proc. Ann. 66.3 (a), (c) and (f) (Vernon Pam. 2012)].

Reasons For Review                                                   8

Prayer For Relief                                                   10

Certificate of Service                                             11

APPENDIX— OPINION OF THE 11th COA

NO. PD-_____

IN THE

COURT OF CRIMINAL APPEALS

FOR THE

STATE OF TEXAS

------------------------------------------------------------

MICHAEL DEWAYNE CARELL,

PETITIONER

V.

THE STATE OF TEXAS,

APPELLEE

---

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

---

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

Comes now Appellant, Michael Dewayne Carell, TDC#1863720, Pro-Se, and respectfully urges this Court to GRANT discretionary review in the above-numbered cause.

**STATEMENT REGARDING ORAL ARGUMENT**

The disposition of this case could have a substantial impact on the appellate review of alleged errors. Should the Court desire oral argument, Appellant requests that this Court appoint counsel for such matters and to appear and discuss the issues with the Court.

4.

## STATEMENT OF PROCEDURAL HISTORY

Appellant, Michael Dewayne Carell, was indicted by a Grand Jury for Tarrant County, Texas, for the offense of Aggravated Robbery. See Tex.Penal Code Ann. § 29.03(a)(2) (West 2011). Appellant with counsel, entered a plea of not guilty to the charge in the indictment and the case was tried to a jury. The jury heard the evidence and argument of counsel and found Appellant guilty as charged. Appellant pleaded true to the enhancement allegation and the court sentenced Appellant to (50) fifty-years confinement in the Texas Department of Criminal Justice, Institutional Division, with no fine.

Appellant gave notice of appeal and the parties filed briefs. On July 30, 2015 the **11th Court of Appeals** affirmed Appellant's conviction and sentence. <u>Carell v. State</u>, (not designated for publication). No Motion-for-Rehearing was filed. This Petition is being filed with the Texas Court of Criminal Appeals within the statutory time limits and deadline set for October 30, 2015.

## STATEMENT OF THE CASE

The Court of Appeals summarized the record regarding the offense as follows:

### Background Facts

Cody Dale Smith is an acquaintance of Appellant. Smith testified that he, Appellant and others were up all night doing drugs, including methamphetamine. Smith said that he drove Appellant to a home around 6:30a.m. purportedly to borrow money from Appellant's aunt so that Smith and Appellant could rent a motel room. Smith testified that he and Appellant entered the home through an unlocked door. After he saw Appellant pull out a gun, Smith returned to his car. The home actually belonged to C.B. C.B.'s neighbor's home surveillance video showed Smith's car drive past C.B.'s home several times before the robbery. The video also showed Smith and Appellant walk by.

5.

C.B. testified that a black male wearing jeans and a "blue and striped" dress shirt entered her bedroom with a gun while she was asleep. He woke her up and demanded cash and other valuables. C.B. gave the man three rings from her bathroom because she had no cash. C.B. then led a man to a bedroom where S.B., her son, was still in bed. The man again demanded valuables, and he threatened to shoot C.B. and S.B. They collected additional items from around the house because they feared for their lives. The man took the rings, several firearms and C.B.'s purse from the house. He subsequently abandoned the purse and firearms in a park across the street.

Roger Soto, was interviewed and the police examined his phone and found the numbers that had been called by the man who approached him. Those numbers were to a number on the account of Stacy McMillan, who informed the police that her son, Cody Smith, his father.

A homeowner with a security camera system had recorded video that morning that showed two men walking in the neighborhood and showed a gold Taurus circling the block that morning.

Dtective Frizzell of the Grand Prairie police interviewed Cody Smith, who admitted his involvement. Smith testified that he had driven a person he said was Michael Carell to the area where the robbery occurred because Carell had told him that his aunt lived in the house, that Smith had gone into the house with Carell, that Smith saw pictures in the house of a white family, causing him to think that Carell's aunt did not live there, that Smith saw Carell pull a gun before they encountered anyone in the house and that Smith left the house at that time.

Smith testified that he had gone back to the gold Taurus and had driven around for a while until he got a call from Carell asking him to meet Carell at a nearby elementary, which he did, and they then drove away from the area.

6.

After Dtective Frizzell interviewed Smith he obtained a search warrant for the gold Taurus and in the trunk he found a checkbook with checks containing the printed name of Michael Carell.

Frizzell arrested Michael Carell, pursuant to an arrest warrant he had obtained, and after the arrest, examined the contents of Carell's wallet and found a business card of Amy's Gold and Silver Exchange. Frizzell went to the business and obtained records showing that a man claiming to be Michael Carell had sold two rings to the business on the day of the robbery.

C.B. viewed a photo line-up identification procedure conducted by lead investigator of the case-Detective Frizzell, but did not identify Carell's photo as the robber. S.B. viewed the photo spread, and identified Carell's photo, and the record of the procedure indicated that a "tentative ID" was made and 80% sure he was the person who came into the house.

Roger Soto viewed a photo array, also made a "tentative ID," and placed his level of certainty at 90%.

S.B. and Soto each identified a different photograph as the person they saw that morning, and Frizzell testified that both photographs were of Carell. S.B. could not identify anyone in open court as his assailant, but Soto identified Carell in open court as the man whom he talked with the morning of the robbery.

## QUESTIONS PRESENTED FOR REVIEW

I.  Did the 11th Court of appeals error in affirming the appellant's conviction based on a decision that conflicts with the decision with another Court of Appeals on the same matter?

II. Whether the 11th Court of Appeals decided an important question of state or federal law that has not been, but should be settled by the Court of Criminal Appeals?

III. Whether the 11th Court of Appeals decided an important question of state or federal law in conflict with the applicable decisions of the Court of Criminal Appeals or the United States Supreme Court?

IV. Whether the decision rendered by the 11th Court of Appeals is in conflict with this Hon. Court's ruling set forth in; Mendez V. State, 138 S.W.3d 334 (Tex.Crim.App.2004), that the issuance of an order of referral to a magistrate under Tex.Gov't Code Ann. § 54.657, is a systemic right that cannot be waived or forfeited?

[Tex.R.App.Proc. Ann. 66.3 (a), (c) and (f) (Vernon Pam.1012)].

## REASONS FOR REVIEW [TRAP 66.3]

The 11th Court of Appeals (hereinafter 11th COA), affirmed this conviction finding that appellant has waived his complaint under Sectiin 54.657 of the Tex.Gov't Code because he did not object to the magistrate presiding over jury selection. This case was transferred to the 11th COA from the 2nd COA in Fort Worth pursuant to an order of the Texas Supreme Court under the authority of section 73.001 of the Tex.Gov't Code. Gov't § 73.001. By which the 11th COA

8.

states that in accordance with rule 41.3 of the Tex.Rules App.Proc., they [11th COA] are required to follow the precedent of the 2nd COA unless, it appears that the transferor court itself would not be bound by that precedent. [TRAP 41.3].

Section 54.651 of the Texas Government Code authorizes the criminal district court judges of Tarrant County to appoint magistrates who are empowered to carry out the duties set out in 54.658, which includes the power to "select a jury." Presumably our lawmakers intended by this that the magistrates may preside over jury selection, since judges do not select juries.

Section 54.657 states as follows:

" (a) To refer one or more cases to a magistrate, a judge must issue an order of Referral specifying the magistrate's duties."

In the instant case, Honorable Gene Grant, A Tarrant County Magistrate, presided over jury selection. The Clerk's Record and the Reporter's Record do not include any order of referral from Honorable Mollee Westfall, elected Judge of the 371st District Court of Tarrant County.

The gist of the issues raised to the 11th COA is that jury selection conducted by an unelected magistrate without the constitutional authority of a district judge, violated the appellant's right to be tried in accordance with the Constitution and Laws of the State of Texas.

Here, appellant asserts that the 11th COA rendered a decision that is in conflict with another COA on the same mater and has not been, but should be settled by this Honorable Court respectively.

Following its previous holding requiring a referral order in Ex Parte Pardun, 727 S.W. 2d 131 (Tex.Crim.App.-Dallas 1987), the Dallas 5th District COA in Ex Parte Oscar Lopez DeLeon, No. 05-11-00594, (Ct.App. Dallas 2011) ruled that because there was no order of referral the magistrate did not have the authority

Further, the established precedent decided by this Honorable Court in: Mendez V. State, 138 S.W.3d 334, 342 (Tex.Crim.App. 2004) Held; "That because the Magistrate's duty to issue an order of referral is not optional, it is a systemic right, and therefore cannot be waived or forfeited."

Appellant's contention here is that the controlling caselaw precedent should be that of this Honorable Court of Appeals of Texas which is clearly established in the Mendez court, decided in 2004 [emphasis added] and not that of the NASH court, infra, decided by the lower court in 2003. (See; Nash v. State, 123 S.W. 3d 534 (Tex.App.-Fort Worth 2003 pet.ref'd)).

In sum, the 11th COA incorrectly applied the controlling caselaw authority on appeal by rejecting this Honorable Court's precedent and replacing it with that of the lower courts opinion. Such assumptions are not contemplated by the law which requires the issuance of an order of referral to a magistrate is a "systemic right" that cannot be waived or forfeited. In making this decision the 11th COA DENIED appellant his right to a full and fair review of his point of error raised in this appeal. Appellant also has not been aforded the right to have his matters squarely adjudicated.

## PRAYER

Wherefore, Appellant prays that the Honorable Court of Criminal Appeals GRANT review in this matter, that the case be set for submission, and that after submission, this Hon. Court reverse the judgement of the 11th COA and remand the case back to the Appeals Court for Reconsideration.

Respectfully Submitted,

/s/ _Michael Carell_

(Appellant, Pro-Se)

Michael Dewayne Carell #1863720
Allred Unit
2101 FM 369 N.
Iowa Park, Tx. 76367

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this <u>26th</u> day of <u>October</u>, 2015, the following have been completed:

(1) A legible copy of appellant's Petition for Discretionary Review in the above cause number has been sent by U.S. Mail by placing the Petition in the prison mailbox system on the above date forwarde to:

Clerk of the
Texas Court of Criminal Appeals,
Attn: Abel Acosta
P.O. BOX 12308
Capitol Station
Austin, Tx. 78711

/s/ _Michael Carell_
(Appellant, Pro-Se)

Michael Dewayne Carell #1863720
Allred Unit
2101 FM 369 N.
Iowa Park, Tx. 76367



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00220-CR

_____

## MICHAEL DEWAYNE CARELL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 371st District Court
### Tarrant County, Texas
### Trial Court Cause No. 1295039D

### MEMORANDUM OPINION

Michael Dewayne Carell appeals his jury conviction for aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011). The trial court assessed his punishment at confinement for a term of fifty years in the Institutional Division of the Texas Department of Criminal Justice. Appellant raises three issues on appeal. We affirm.

## Background Facts

Cody Dale Smith is an acquaintance of Appellant. Smith testified that he, Appellant, and others were up all night doing drugs, including methamphetamine. Smith said that he drove Appellant to a home around 6:30 a.m. purportedly to borrow money from Appellant's aunt so that Smith and Appellant could rent a motel room. Smith testified that he and Appellant entered the home through an unlocked door. After he saw Appellant pull out a gun, Smith returned to his car. The home actually belonged to C.B. C.B.'s neighbor's home surveillance video showed Smith's car drive past C.B.'s home several times before the robbery. The video also showed Smith and Appellant walk by.

C.B. testified that a black male wearing jeans and a "blue and striped" dress shirt entered her bedroom with a gun while she was asleep. He woke her up and demanded cash and other valuables. C.B. gave the man three rings from her bathroom because she had no cash. C.B. then led the man to a bedroom where S.B., her son, was still in bed. The man again demanded valuables, and he threatened to shoot C.B. and S.B. They collected additional items from around the house because they feared for their lives. The man took the rings, several firearms, and C.B.'s purse from the house. He subsequently abandoned the purse and firearms in a park across the street.

Shortly after the robbery occurred, Appellant approached Rogelio Javier Soto at a nearby construction site where Soto worked. Appellant asked Soto for a job, and when Soto declined, Appellant asked to use Soto's cell phone to call for a ride. Soto noticed that Appellant had a gun in his waistband. Soto testified that Appellant wore a "gray wife beater . . . and jeans" and held "a Polo-looking shirt that was striped, two color in tone." Appellant called Smith and asked him for a ride. Smith testified that, when he picked up Appellant, Appellant showed him three rings and told him that he had just robbed a woman.

2

Around 10 a.m., Smith and Appellant went to Amy's Gold and Silver, where Appellant sold two rings. The store clerk testified that he bought two rings from "Dewayne Carell," and his description of the two rings corresponded with C.B.'s and Smith's description of two of the rings that had been stolen. The receipt of the sale bears Appellant's signature. Appellant bought gas for Smith's car and rented a motel room with the money from the sale of the rings. Smith testified that he later talked with one of his friends and discovered that Appellant had obtained more methamphetamine, which Smith thought Appellant purchased with the money from the sale of the rings.

Alan Frizzell, a police officer for the city of Grand Prairie, checked Soto's phone records. Frizzell was able to connect the phone calls that Appellant made from Soto's phone to Smith. Detective Frizzell asked Smith to meet with him under false pretenses. When Detective Frizzell confronted Smith about the robbery, Smith told him that he thought he was taking Appellant to his aunt's house to borrow money. Smith later admitted to Detective Frizzell that he went with Appellant for the purpose of burglarizing the house.

Detective Frizzell prepared photo lineups to show C.B. and S.B. in order for them to identify their assailant. Soto also viewed a photo lineup to identify the person that approached him and used his cell phone. C.B. could not identify the assailant from the photographs, but S.B. and Soto made tentative identifications of Appellant. S.B. and Soto each identified a different photograph as the person they saw that morning, and Detective Frizzell testified that both photographs were of Appellant. S.B. could not identify anyone in open court as his assailant, but Soto identified Appellant in open court as the man whom he talked with the morning of the robbery. Detective Frizzell obtained an arrest warrant for Appellant, and after Appellant's arrest, Detective Frizzell searched him and found a business card for Amy's Gold and Silver in Appellant's wallet. Detective Frizzell obtained the

records for the sale of the two rings from Amy's Gold and Silver, and the sales clerk provided receipts.

*Analysis*

In his first issue, Appellant contends that the magistrate who presided over the jury selection was not authorized to do so because the trial court did not issue an order of referral to the magistrate. In his second issue, Appellant asserts that he received ineffective assistance of counsel. In his final issue, Appellant contends that the evidence was insufficient to support his conviction.

We will address Appellant's sufficiency issue first. We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

4

The indictment alleged that, while in the course of committing theft of property and with intent to obtain or maintain control of said property, Appellant intentionally or knowingly threatened or placed C.B. in fear of imminent bodily injury or death and that Appellant used or exhibited a deadly weapon, to-wit: a firearm, in doing so. *See* PENAL §§ 29.02(a)(2), 29.03(a)(2) (West 2011), § 31.03(a), (b)(1) (West Supp. 2014). Appellant acknowledges that there is no dispute that C.B. was the victim of a robbery on the date in question. He directs his challenge to the sufficiency of the evidence on the purported lack of physical evidence linking him to the robbery and purported deficiencies in the witnesses' identification of him as the assailant.

As noted previously, Smith testified that he and Appellant traveled to C.B.'s home and that they entered it without C.B.'s consent. Smith further testified that Appellant had a gun at the home. Smith later picked up Appellant after Appellant called him. Smith testified that Appellant possessed three rings at that time that he said he had just stolen from a woman. C.B. testified that she gave her assailant three rings. C.B.'s neighbor's home surveillance video showed Smith's car pass by several times and also showed Smith along with a black male walking by that location. Smith identified Appellant as the person with him in the video, and S.B. said the person accompanying Smith on the video looked similar to his assailant.

The clerk from Amy's Gold and Silver testified that he bought two rings from "Dewayne Carell" and that the rings he purchased fit C.B.'s and Smith's description of the stolen rings. The clerk bought the rings at the same approximate time that Smith said that he and Appellant went to sell the rings. Furthermore, the receipt for the transaction bears Appellant's signature. Additionally, Detective Frizzell found a business card in Appellant's wallet from the business that bought the rings.

Although Soto only made a tentative identification of Appellant in the photo lineup, he identified Appellant in open court. Soto testified that Appellant had a gun

and wore a striped shirt and jeans when he talked with him. Soto's description of Appellant was similar to C.B.'s description of her assailant. Soto's cell phone records of the call Appellant made on his phone connected Appellant to Smith.

Although Smith gave two different versions of his involvement with the robbery to Detective Frizzell, he never changed his story about Appellant's involvement. Additionally, the trial court instructed the jury on the corroboration requirement for accomplice witness testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). There was ample non-accomplice evidence to corroborate Smith's testimony, and the non-accomplice evidence tended to connect Appellant to the offense. Viewing all of the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found that Appellant committed the offense of aggravated robbery as alleged in the indictment. Accordingly, sufficient evidence supports Appellant's conviction. We overrule Appellant's third issue.

Appellant argues in his first issue that the magistrate who presided over jury selection was unauthorized to do so. Chapter 54, Subchapter H of the Texas Government Code provides for the use of magistrates in Tarrant County. TEX. GOV'T CODE ANN. § 54.651–.663 (West 2013). The statute specifically permits the referral of proceedings involving jury selection to magistrates. *Id.* §§ 54.656(d), 54.658(14). Section 54.657 requires the trial court to issue an order of referral in order to refer a matter to a magistrate. *Id.* § 54.657.

Appellant contends that, in the absence of an order of referral as required by Section 54.657, the magistrate had no authority to act. Appellant cites *Ex parte DeLeon*, No. 05-11-00594-CR, 2011 WL 3690302 (Tex. App.—Dallas Aug. 24, 2011, no pet.) (not designated for publication), in support of this proposition. In reviewing a similar statute, the Dallas Court of Appeals held in *DeLeon* that the issuance of an order of referral to a magistrate is a "systemic right" that cannot be waived or forfeited. *Id.* at *2 (citing *Mendez v. State*, 138 S.W.3d 334, 342 (Tex.

6

Crim. App. 2004)). Accordingly, the court held in *DeLeon* that a party is not required to preserve error in the trial court regarding the absence of an order of referral to a magistrate. *Id.*

Appellant did not object to the magistrate presiding over jury selection. Citing cases from the Fort Worth Court of Appeals, the State contends that Appellant's failure to object constitutes a waiver of his complaint on appeal. We agree. This case has been transferred to us from the Second Court of Appeals in Fort Worth pursuant to an order of the Texas Supreme Court under the authority of Section 73.001 of the Texas Government Code. GOV'T § 73.001. In accordance with Rule 41.3 of the Texas Rules of Appellate Procedure, we are required to follow the precedent of the Fort Worth Court of Appeals unless it appears that the transferor court itself would not be bound by that precedent. TEX. R. APP. P. 41.3.

The Fort Worth Court of Appeals has held that a defendant must object to a magistrate presiding over jury selection in order to preserve error for appellate review. *Nash v. State*, 123 S.W.3d 534, 536–37 (Tex. App.—Fort Worth 2003, pet ref'd); *Lemasurier v. State*, 91 S.W.3d 897, 900 (Tex. App.—Fort Worth 2002, pet. ref'd); *McKinney v. State*, 880 S.W.2d 868, 870 (Tex. App.—Fort Worth 1994, pet. ref'd); *see Guerrero v. State*, No. 02-13-00611-CR, 2015 WL 1407748, at *4 (Tex. App.—Fort Worth April 30, 2015, no pet.) (mem. op., not designated for publication) (holding "that in order to challenge a trial court's referral of voir dire to a magistrate, the appellant must have preserved error in the trial court"). The recent opinion in *Guerrero* is particularly instructive because the Fort Worth Court of Appeals expressly rejected the holding in *DeLeon*. *Guerrero*, 2015 WL 1407748, at *4. The court held that its holding in *Nash* is controlling on the issue. *Id.* Accordingly, Appellant has waived his complaint under Section 54.657 because he did not object to the magistrate presiding over jury selection. We overrule Appellant's first issue.

7

Appellant contends in his second issue that he received ineffective assistance of counsel because his trial counsel failed to (1) object to extraneous offenses of drug possession and use, (2) challenge questionable jurors for cause, (3) object to items seized from Appellant's wallet, and (4) vigorously cross-examine witnesses about photo identification procedures. To determine whether Appellant's trial counsel rendered ineffective assistance, we must first determine whether Appellant has shown that his counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result of the proceeding would have been different but for his counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986). A failure to make a showing under either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). An allegation of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). With respect to allegations of ineffective assistance of counsel, the record on direct appeal is generally undeveloped and rarely sufficient to overcome the presumption that trial counsel rendered effective assistance. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 813–14. The Court of Criminal Appeals has said that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). If

trial counsel has not had an opportunity to explain his actions, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). We note at the outset of our analysis that Appellant did not file a motion for new trial. Accordingly, trial counsel has not had an opportunity to explain his actions.

Appellant first contends that his trial attorneys were ineffective because they failed to object to the introduction of extraneous offenses pertaining to Appellant's drug possession and drug use. In order to prevail on this contention, Appellant must establish that the evidence was inadmissible because defense counsel's failure to object to admissible evidence does not constitute ineffective assistance of counsel. *See Ex parte Jimenez*, 364 S.W.3d 866, 887 (Tex. Crim. App. 2012). Rule 404(b) incorporates the fundamental tenet of our criminal justice system that an accused may be tried only for the offense for which he is charged, not for his criminal propensities. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996); *see* TEX. R. EVID. 404(b). For an extraneous offense to be admissible, it must be relevant apart from supporting an inference of character conformity. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991). The State contends that the evidence cited by Appellant had relevance apart from character conformity because it constituted either same transaction contextual evidence or provided relevant evidence about Appellant's drug-related motive to commit aggravated robbery.

As we stated in *Greene v. State*, 287 S.W.3d 277, 283 (Tex. App.—Eastland 2009, pet. ref'd):

> Extraneous offense evidence may be admissible for purposes other than those expressly listed in Rule 404(b). For example, such evidence may be admissible as same transaction contextual evidence, which has been defined as evidence of other offenses connected with the offense charged. *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App.

2000); *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993); *Swarb v. State*, 125 S.W.3d 672, 681 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd). "[I]t has long been the rule in this State that the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986). Same transaction contextual evidence is admissible under Rule 404(b) to the extent that it is necessary to the jury's understanding of the charged offense, such as when the charged offense would make little or no sense without it. *Wyatt*, 23 S.W.3d at 25; *Swarb*, 125 S.W.3d at 681. The purpose of admitting extraneous offense evidence as same transaction contextual evidence is to place the instant offense in context. *Nguyen v. State*, 177 S.W.3d 659, 667 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

The evidence cited by Appellant concerns his drug possession and drug use with Smith before and after the robbery. This evidence provided a reason why Appellant committed the robbery. Accordingly, Appellant has not established that the trial court would have erred in overruling the objections he contends trial counsel should have made. Additionally, the record is silent concerning why Appellant's counsel did not object to this testimony. Perhaps trial counsel determined that the evidence would have been admissible under the authority cited above. We cannot conclude that Appellant's counsel's actions were so outrageous that no competent attorney would have done likewise. *See Garcia*, 57 S.W.3d at 440. Accordingly, Appellant has not satisfied the first prong of *Strickland*. *See Strickland*, 466 U.S. at 687.

Appellant next argues that his trial attorneys were ineffective for not challenging several potential jurors for cause. Appellant acknowledges that none of these potential jurors sat on the jury panel. He contends that trial counsel's performance caused him to "lose valuable strikes that should not have [had] to be used on these panelists." In the absence of a record addressing the strategy of trial counsel in the exercise of challenges for cause and peremptory strikes, the record does not establish that trial counsel's performance fell below the objective standard of reasonableness.

Appellant also claims ineffective assistance based on his trial counsel's failure to object to the business card seized from Appellant's wallet after his arrest. "A search incident to arrest permits officers to search a defendant, or areas within the defendant's immediate control, to prevent the concealment or destruction of evidence." *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). Thus, even if Appellant's trial counsel had objected to the admission of the business card based on an illegal search, the trial court would not have erred in admitting a copy of the business card because Appellant had already been arrested and because Detective Frizzell found the business card in a search incident to that arrest. *See id.* Because counsel's actions were not deficient, Appellant has not satisfied the first prong of *Strickland*. *See Strickland*, 466 U.S. at 687.

Appellant also argues that his trial attorneys were ineffective because they failed to "vigorously" cross-examine some witnesses about the photo identification procedures. Appellant's trial counsel cross-examined Detective Frizzell about the photo lineup procedures but did not cross-examine Soto or S.B. about the photo lineup procedures. Appellant also contends that his trial attorneys did not make the jury aware of the fact that Soto and S.B. tentatively identified State's Exhibit Nos. 48 and 54, respectively, as Appellant, but that the photographs appear to be of two different people. We initially note that Defendant's Exhibit No. 1 showed that the photograph in State's Exhibit No. 48 was Appellant. Detective Frizzell also testified that State's Exhibit Nos. 48 and 54 were both photographs of Appellant. In this regard, the jury had the pictures in evidence to look at and compare to Appellant's physical appearance at trial.

We conclude that the absence of trial counsel's reasoning in conducting cross-examination precludes a finding that counsel was "objectively deficient." *Ex parte McFarland*, 163 S.W.3d 743, 754 (Tex. Crim. App. 2005). "Cross-examination is inherently risky, and a decision not to cross-examine a witness is often the result of

11

wisdom acquired by experience in the combat of trial." *Id.* at 756. "[C]ross-examination is an art, not a science, and it cannot be adequately judged in hindsight." *Id.* Furthermore, Appellant has not shown that a reasonable probability exists that the result of the proceeding would have been different but for the alleged errors of his trial attorneys. Accordingly, Appellant has not satisfied either prong of *Strickland.* We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


                                        JOHN M. BAILEY
                                        JUSTICE


July 30, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.